**NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellant and Appellee,**

v.

**D. D. HARRINGTON et al., Appellees and Appellants.**

**D. D. HARRINGTON et al., Appellees and Appellants,**

v.

**NATURAL GAS PIPELINE COMPANY OF AMERICA, Appellant and Appellee.**

No. 16206.

United States Court of Appeals Fifth Circuit.

July 9, 1957.

916

Clarence H. Ross, Chicago, Ill., D. H. Culton, Amarillo, Tex., Warren T. Spies, Chicago, Ill., Ross & O'Keefe, Chicago, Ill., Culton, Morgan, Britain & White, Amarillo, Tex., of counsel, for appellants.

David T. Searls, Gene M. Woodfin, Houston, Tex., Hugh L. Umphres, Jr., Amarillo, Tex., J. Evans Attwell, Vinson, Elkins, Weems & Searls, Houston, Tex., Umphres & Umphres, Amarillo, Tex., Vinson, Elkins, Weems & Searls, Houston, Tex., Umphres & Umphres, Amarillo, Tex., of counsel, for appellee.

Before BORAH, RIVES and BROWN, Circuit Judges.

RIVES, Circuit Judge.

Restitution was sought by Natural from Harrington [1] for the difference between the contract rate for the purchase of natural gas and the price paid in compliance with an order of the Oklahoma Corporation Commission which was later declared invalid by the United States Supreme Court. The district court found Natural entitled to restitution in

---

1. To avoid confusion, particularly from the cross-appeals, D. D. Harrington, et al, and their predecessors in interest, Panoma Corporation, will be collectively referred to as "Harrington", and Natural Pipeline Company of America as "Natural".

the sum of $1,302,491.23. It deducted from the restitution claimed $321,279, being $237,000 paid by Panoma as increased royalties and $84,279 paid as increased gross production taxes, and allowed no interest prior to the date of the judgment. Both Harrington and Natural appeal.

Harrington insists that Natural is not entitled to any restitution; Natural contends that the court erred as to each of the several sums deducted, and in denying it full restitution plus interest. Since the district court rendered summary judgment, we must, in examining each of the questions, determine whether there was any genuine issue as to any material fact and whether the judgment was right as a matter of law.

Judge Estes' excellent opinion, reported in 139 F.Supp. at 452, et seq., relieves us of the necessity for making more than a brief statement of the facts. Under the contract effective December 1, 1946, and to endure so long as gas is produced in paying quantities, Harrington had agreed to sell to Natural the gas produced from Harrington's wells located in some 78,000 acres of gas reserves in the Guymon-Hugoton Field in Texas County, Oklahoma, at 7 cents per M. c. f. measured at 16.4 pounds per square inch, equivalent to 6.253 cents when measured at 14.65 pounds pressure and 60 degrees Fahrenheit. On December 9, 1946, a few days after the effective date of the contract, the Oklahoma Corporation Commission entered its first order fixing a minimum price of seven cents for all gas measured at 14.65 pounds and 60 degrees Fahrenheit removed from the Guymon-Hugoton Field. Natural refused to comply with this order, and, on May 17, 1951, the Oklahoma Commission directed Natural to pay the difference between the contract price and the seven cents minimum price. Natural posted bond and superseded the order. No payments were ever made under that first order.

On July 29, 1952, the Oklahoma Commission issued its second order increasing the minimum price to 9.8262 cents.

The effective date of this order was delayed until September 10, 1952. On September 9, 1952, Natural notified Panoma, Harrington's predecessor, that it would appeal from the order and would *not* supersede, but (repeated with each payment) that it would pay the 9.8262 cents under protest, and would, upon success in the appeal, seek restitution for the amounts paid in excess of the contract price with lawful interest thereon.

Without considering the Natural Gas Act enacted by Congress in 1938, 52 Stat. 833, 15 U.S.C. § 717v, the Supreme Court had in 1950 upheld the validity as against certain constitutional objections of the first Oklahoma minimum price order. Cities Service Gas Co. v. Peerless Oil & Gas Co., 340 U.S. 179, 71 S.Ct. 215, 95 L.Ed. 190. Following the landmark case of Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, the second order was declared invalid on April 11, 1955, because "such a sale and transportation cannot be regulated by a State but are subject to the exclusive regulation of the Federal Power Commission." Natural Gas Pipeline Co. v. Panoma Corporation, et al., 349 U.S. 44, 75 S.Ct. 576, 99 L.Ed. 866.

Meanwhile, on July 1, 1954, pursuant to a plan for liquidation, Panoma transferred all its assets to its stockholders, Harrington, et al., the defendants below. The consent of Natural to certain assignments of the contract incident to such transfer was required, and, in consideration of Natural's consent, Harrington, et al., executed a letter containing the following obligation:

"That we hereby jointly and severally agree on behalf of ourselves, our executors, administrators and assigns to pay you or cause to be paid you any sums of money with lawful interest thereon which you are entitled to have refunded or returned with respect to the payments to Panoma Corporation in excess of the contract price made under protest referred to in said letter of

September 9, 1952. We do also jointly and severally, for ourselves, our heirs, executors, administrators and assigns agree to and do hereby acknowledge and assume any obligations imposed upon Panoma Corporation by virtue of the letter you addressed to it under date of September 9, 1952."

Harrington, et al., resold the major portion of the assets to third persons, and received therefor $40,000,000 in cash plus other valuable considerations. The restitution here sought is for claimed overpayments for gas delivered between September 10, 1952, the effective date of the second Oklahoma minimum price order, and July 1, 1954, the date of sale of Harrington's assets.

Harrington's principal defense is based upon the equitable nature of the remedy of restitution so clearly expressed by Mr. Justice Cardozo in Atlantic Coast Line R. Co. v. State of Florida, 295 U.S. 301, 309, 310, 55 S.Ct. 713, 79 L.Ed. 1451. In that case, an order of the Interstate Commerce Commission requiring an increase of intrastate rates because discriminatory against intrastate commerce had been set aside "solely upon the ground that the facts supporting the conclusion were not embodied in the findings" (295 U.S. 311, 55 S.Ct. 717). The Commission thereafter "looked into the past and ascertained the facts. In particular, it looked into the very years covered by the claims for restitution and found the inequality and injustice inherent in the Cummer rates during the years they were in suspense and during those they were in force." 295 U.S. 312, 55 S.Ct. 718.

"By the time that the claim for restitution had been heard by the master and passed upon by the reviewing court, the Commission had cured the defects in the form of its earlier decision. During the years affected by the claim there existed in very truth the unjust discrimination against interstate commerce that the earlier decision had attempted to correct. If the processes of the law had been instantaneous or adequate, the attempt at correction would not have missed the mark. It was foiled through imperfections of form, through slips of procedure * * * as the sequel of events has shown them to be." 295 U.S. at pages 311, 312, 55 S.Ct. at page 717.

The Supreme Court directed that the claims for restitution be dismissed, holding that the federal court "discovers through the evidence submitted to the Commission and renewed in the present record that what was charged would have been lawful as well as fair if there had been no blunders of procedure, no administrative delays." 295 U.S. at page 315, 55 S.Ct. at page 719. See also United States v. Morgan, 307 U.S. 183, 196, 59 S.Ct. 795, 83 L.Ed. 1211.

Harrington calls attention that in the instant case the order of the Oklahoma Commission was not invalidated on its merits, or because the rate of 9.8262 cents was unjust or unreasonable, but simply because exclusive jurisdiction was vested in the Federal Power Commission, and that that Commission, by its order of November 14, 1955, accepted as the present effective rate of Harrington's successor in interest, the same 9.8262 cents.

It should further be noted, however, that the invalidity of the order of the Oklahoma Commission was not caused by any defect or imperfection of form or slip of procedure but resulted from a total lack of jurisdiction. Further, the Federal Power Commission by its order of November 14, 1955, spoke for the future only, and did not possess the power enjoyed by the Interstate Commerce Commission in the Atlantic Coast Line case, supra, of looking into the past and ascertaining the facts. Nor does any court possess such power for the purpose of fixing retroactively a just, reasonable, and lawful rate. Here the parties themselves had fixed the rate to be charged by their solemn and binding contract, and that contract rate could be changed only by the Federal Power Com-

mission after a hearing conducted in accordance with Section 5(a) of the Natural Gas Act, 15 U.S.C.A. § 717d(a). United Gas Pipe Line Co. v. Mobile Gas Corporation, 350 U.S. 332, 76 S.Ct. 373, 100 L.Ed. 373. Moreover, in the Atlantic Coast Line case, supra, the railroad carrier was entitled to the protection of the order of the Interstate Commerce Commission against being required to accept the unreasonably low intrastate rates, while here the primary aim of the Natural Gas Act was "protection of consumers against exploitation at the hands of natural-gas companies." Phillips Petroleum Co. v. State of Wisconsin, 347 U.S. 672, 685, 74 S.Ct. 794, 800 (concurring opinion of Mr. Justice Frankfurter). Even the Federal Power Commission, which had exclusive jurisdiction, could increase the contract rate only because of considerations of the public interest and not on account of any claimed right of Harrington to relief from an improvident bargain. Federal Power Commission v. Sierra Pacific Power Co., 350 U.S. 348, 355, 76 S.Ct. 368, 100 L.Ed. 388.

True, in United Gas Pipe Line Co. v. Mobile Gas Corporation, supra, the contract was filed with the Federal Power Commission, and here it was not so filed. Section 4(c) of the Natural Gas Act, 15 U.S.C.A. § 717c(c), provides that:

"Under such rules and regulations as the Commission may prescribe, every natural-gas company shall file with the Commission, within such time (not less than sixty days from the date this act takes effect) and in such form as the Commission may designate, and shall keep open in convenient form and place for public inspection, schedules showing all rates and charges for any transportation or sale subject to the jurisdiction of the Commission, and the classifications, practices and regulations affecting such rates and charges, together with all contracts which in any manner affect or relate to such rates, charges, classifications, and services."

Until the decision in Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, the parties, and indeed the Commission itself, had proceeded upon the assumption that the Commission had no regulatory jurisdiction over the rates of independent producers. After that decision, the Commission, by its Orders 174 and 174A, entered July 16, 1954 and August 6, 1954, respectively fixed the time within which such producers could file their rates. Since the Phillips decision, it has become clear to all of the parties that the contract should have been filed with the Commission. The failure to file it earlier, however, did not prevent the jurisdiction of the Commission from attaching. Interstate Natural Gas Co. v. Southern California Gas Co., 9 Cir., 209 F.2d 380, 384. There is nothing in the Natural Gas Act or in the orders of the Federal Power Commission to indicate that, under such circumstances, until the rates were filed there was *no* effective or lawful rate. To the contrary, the Act expressly provided for delay in such filing, and under the rationale of United Gas Pipe Line Co. v. Mobile Gas Corporation, supra, the contract rate, even though unfiled, became and remained the only lawful rate until changed by order of the Federal Power Commission. Any price in excess of the contract rate was then contrary to the spirit, if not the letter, of the Natural Gas Act.

Harrington insists, however, that the excess payments were voluntarily made by Natural, or at least that there was a genuine issue of fact as to whether they were involuntarily made under coercion of "business duress." Natural, of course, concedes that restitution will not lie if the excess payments were voluntarily made.[2] Further, duress or coercion must exist, and the written protest does not, by itself, make the payments involuntary. Union Pacific R. Co. v. Dodge County Commission-

---

2.  For the basic reason of that rule, see 40 Am.Jur., Payment, Sec. 158.

ers, 98 U.S. 541, 544, 25 L.Ed. 196; Bank of United States v. Bank of Washington, 1832, 6 Pet. 8, 12, 8 L.Ed. 299.

The order of the Oklahoma Commission directed,

"That no gas shall be produced from any well located in the Guymon-Hugoton Field of Oklahoma except at a price of not less than 9.8262c per thousand cubic feet if sold at the wellhead or on the lease or drilling unit from which produced, or a price equivalent to not less than 9.8262c per thousand cubic feet at the wellhead if sold off the lease or drilling unit or otherwise utilized."

Assuming validity of the order, its violation carried criminal sanctions under an Oklahoma Statute (O.S., Title 52, Sec. 278) providing for a fine of not to exceed $5,000 or imprisonment in the county jail for not more than thirty days, or both such fine and imprisonment on those who violate its conservation laws. Mr. T. Murray Robinson, counsel for Panoma, Harrington's predecessor, filed an affidavit in which he conceded:

"That after said order was entered, Mr. Coleman Hayes, who represented Natural Gas Pipeline Company of America in said proceedings, visited with me by telephone concerning the effect of said order on the relationship of Panoma and Natural. In the course of that conversation I told Mr. Hayes that in my opinion as a lawyer the order of the Commission would become binding unless superseded and that Panoma, like all others, would be compelled to abide thereby, and that in my opinion the order directed producers who were not receiving the minimum price to cease deliveries."

Scant respect would be accorded to the laws of the State of Oklahoma, if it were held that Natural had to go further and speculate on whether Panoma actually would have ceased delivering gas if Natural had refused to pay the increased price.

Natural candidly admits that it was motivated not to supersede the order by its desire to seek from the Federal Power Commission increases reflecting the prices paid under the order, and thus to pass on the increase rather than itself bearing the entire risk. We do not agree with Harrington that such motive converted Natural's payment of the increased rate into a "calculated business maneuver." If anything, the choice between bearing the entire risk of loss and trying to pass it on increased the business duress on Natural to make payments in accordance with the order. See Union Pacific R. Co. v. Public Service Commission, 248 U.S. 67, 70, 39 S.Ct. 24, 63 L.Ed. 131.

Further, Harrington urges that the duress was not imposed by it but was exerted by the Oklahoma Commission. We need not stop to consider whether duress of a third person will suffice (see Restatement of Restitution, Sec. 70b) for, under the circumstances, the Oklahoma Commission was a representative of Harrington and other producers similarly situated. Arkadelphia Milling Co. v. St. Louis S. W. Ry. Co., 249 U.S. 134, 146, 39 S.Ct. 237, 63 L.Ed. 517; see, also, United Gas Pipe Line Co. v. Mobile Gas Corporation, 350 U.S. 332, 347, 76 S.Ct. 373, 100 L.Ed. 373.

■■ Harrington urges that an accord and satisfaction was effected by Panoma's acceptance of Natural's checks containing notations similar to that copied in the margin.[3] It is elementary, however, that an accord and satisfaction can result only from an agreement, and, clearly, Natural made no offer of any agreement that would preclude it from seeking restitution when each of its

3. "Acceptance of this check constitutes full payment of and settlement for the account described on the statement attached * * *
* * * * *

"Payment of gas purchased on original and supplemental contracts from June 23, 1954 to 10:00 A.M. July 1, 1954."

checks was accompanied by a letter specifically renewing its protest as follows:

"Such payment is, as to any part thereof in excess of that payable under the price provisions of said contract, made involuntarily and under protest with full reservation of all rights to seek restitution thereof as is more particularly set forth in our letter to Panoma Corporation dated September 9, 1952, a copy of which is attached hereto for your information."

■ We are in full agreement with the conclusion reached by the learned district judge that Natural is entitled to restitution.

The district court, however, denied Natural's claim for restitution in the sum of $321,279 representing payments made by Panoma, Harrington's predecessor, for increased royalties and increased production taxes. We have held that Panoma had no right to the increased price. It took the same with notice that the rights of all who were to share in such increase were disputed by Natural. It could not voluntarily pay its royalty owners and its taxes on the basis of the increased price at Natural's expense, when the validity of the increase was in dispute Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 24, 40 S.Ct. 419, 64 L.Ed. 751.

We think that the state law provided adequate means by which Panoma could have withheld the increased payments from its royalty owners until the termination of the litigation, or could have paid under protest with a right of recovery, or could reserve the right to itself or its successors to take credit for any overpayment against future royalties. Panoma received the increase in price for the use and benefit of Natural, but it made no effort to protect Natural's interest.

Like considerations are applicable to the payments of taxes on the basis of the increased price. Additionally, it may be noted that Title 68, Section 1475 of the Oklahoma Statutes, 1951, provides for the payment of taxes under protest and their subsequent recovery. Indeed, the Fourteenth Amendment itself would prevent the state from collecting unlawful taxes by coercive means without incurring any obligation to pay them back. Ward v. Board of County Com'rs of Love County, 253 U.S. 17, 24, 40 S.Ct. 419. We hold, therefore, that the district court erred in denying Natural's claim for restitution to the extent of $321,279.00.

■ We agree with the district court that the clear intent of the letter of the stockholders, Harrington, et al., incident to Panoma's liquidation (see page 4, ante) was to assume the same liability that rested upon Panoma. We think, however, that its use of the expression "with lawful interest" referred to interest from and after the time when Natural might become entitled to restitution from such stockholders in lieu of Panoma. Ordinarily, a person liable to make restitution is under a duty to pay interest from the time he commits a breach of duty in failing to make restitution. Restatement of Restitution, Sec. 156(b). The duty to make restitution arose on April 11, 1955, when the Oklahoma order was declared invalid by the Supreme Court of the United States. Previous to that date, Panoma's acceptance of the increased price had been due, not to its fault or volition, but simply to the requirement that it comply with the order of the Oklahoma Commission, and for such period previous to April 11, 1955, we think that interest should not be allowed. See The Claim of Jacobs v. Adams, 1781, 1 Dall. 52, 1 L.Ed. 53.

The district court denied the recovery of any interest without seeking to take advantage of its discretionary power to refuse interest (Okeechobee County, Florida v. Nuveen, 5 Cir., 145 F.2d 684, 687), but fully and fairly stating the reasons for such denial.[4] Each of those

4. "As to the matter of interest, I have concluded that it is just and equitable, under the circumstances of this case, to deny plaintiff's claim for interest. In

reasons was known to the parties on July 1, 1954, when Harrington, et al. agreed to pay Natural "any sums of money with lawful interest thereon which you are entitled to have refunded or returned with respect to the payments to Panoma Corporation in excess of the contract price made under protest referred to in said letter of September 9, 1952." Further, with deference, we disagree with the reasons assigned by the learned district judge. In our opinion, no duty rested on Natural to supersede the order, Natural's suggestion of an escrow arrangement should not prejudice its right to interest, and though it had received increased rates from its customers, such increase was granted subject to the provision recited in the order of the Federal Power Commission, that if Natural be successful in the litigation, " * * * it will refund to its utility customers, on a basis to be approved by the Commission, the sum or sums so recovered."

Finally, we find that there was no genuine issue as to any material fact and that Natural was entitled to judgment as a matter of law. Rule 56(c), Federal Rules of Civil Procedure, 28 U.S.C.A. While the judgment might be affirmed in the part complained of in Harrington's appeal and reversed in the part complained of in Natural's appeal, it is simpler, we think, to vacate the entire judgment and remand the cause with directions to enter judgment in accordance with this opinion in favor of the plaintiff against the defendants for the sum of $1,623,770.23, together with interest at 6 per cent per annum from April 11, 1955 on such sum or any portions thereof remaining unpaid down to the date of payment, and with costs, and it is so ordered. The costs of this appeal are taxed against D. D. Harrington, et al.

Vacated and remanded.

so concluding, I have taken into account all the facts and circumstances before me, including the fact that Natural could have superseded the operation of the order as to this gas, and kept the use of the money, by filing a mere undertaking without surety or penal amount (as did Northern Natural Gas Company);

that it was willing to waive interest if Panoma would agree to the escrowing of the excess payments; and that for most of the period in question it has been able to recoup the excess payments by increased rates to its customers, so that it has not in fact been deprived of the use of the money." [139 F.Supp. 463.]