**CITIES SERVICE GAS COMPANY, a corporation, Plaintiff,**

v.

**UNITED PRODUCING COMPANY, Inc., a corporation, Defendant.**

**Civ. A. No. 4554.**

United States District Court
N. D. Oklahoma.
Feb. 29, 1960.

· C. H. Mullendore, Jr., Charles V. Wheeler, Conrad C. Mount, O. R. Stites, Joe Rolston, Jr., R. R. McCracken, Gordon J. Quilter, Oklahoma City, Okl., for plaintiff.

Embry, Crowe, Tolbert, Boxley & Johnson and William J. Holloway, Jr., Oklahoma City, Okl., for defendant.

ROGER H. SAVAGE, District Judge.

This cause came on regularly for trial before the Court, without jury, on October 28, 1959; the parties appeared by their respective attorneys of record; and the Court, having heard the evidence and argument of counsel, and having considered the briefs filed on behalf of the parties, finds as follows:

1.

Plaintiff, Cities Service Gas Company, at all times pertinent hereto, was a citizen and resident of the State of Delaware; defendant, United Producing Company, Inc., was, at all times pertinent hereto, a citizen and resident of the State of Maryland; the amount in controversy, exclusive of interest and costs, exceeds the sum of $10,000.

2.

At all times pertinent hereto, plaintiff was engaged in its business as an interstate pipeline company, purchasing, transporting and wholesaling natural gas, including the natural gas purchased from defendant involved here, to its customers located in Oklahoma, Kansas, Missouri and Nebraska.

3.

Defendant owns wells located in the Kansas Hugoton Field which produce natural gas and sells plaintiff gas produced therefrom pursuant to a contract which is plaintiff's Exhibit 2.* Such contract provided that plaintiff would pay on the 25th day of each month for the gas delivered during the past month at a price of 7¢ per Mcf, measured at a pressure of 16.4# psia.

4.

During each year involved herein plaintiff purchased not less than 34.76% of the natural gas which it required for its business as an interstate natural gas pipeline company, from production in the Kansas Hugoton Field. Plaintiff had no gas production of its own in the Kansas Hugoton Field.

5.

The purchase and receipt by plaintiff of natural gas produced in the Kansas Hugoton Field was essential to plaintiff's business, as aforesaid, and was necessary for plaintiff to be able to meet the requirements of plaintiff's business and its contractual commitments and the obligations imposed upon it by the terms of the Natural Gas Act.

6.

Under date of February 18, 1949, to be effective March 1, 1949, the State Corporation Commission of Kansas entered an Order providing, inter alia, that all persons who take gas from the Kansas Hugoton Field shall, as a condition precedent for withdrawal of such gas, pay or attribute a minimum price of not less than 8¢ per Mcf, 16.4# psia. Defendant's Exhibit D.*

7.

On February 21, 1951, the State Corporation Commission of Kansas entered an order in the form of defendant's Exhibit E* providing, among other things, that payments should be made on or be-

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

fore April 1, 1951 to producers, land owners, lease owners, and royalty owners in accordance with the order of the Commission of February 18, 1949, and which were impounded or paid under bond thereafter as provided therein.

**8.**

Under date of May 20, 1953, to be effective July 1, 1953, the State Corporation Commission of Kansas entered its Order promulgating a standard gas measurement pressure of 14.65# psia for all gas produced throughout the State of Kansas. Defendant's Exhibit C.*

**9.**

Under date of December 2, 1953, to be effective January 1, 1954, the State Corporation Commission of Kansas entered its Order providing, inter alia, that all persons who take gas from the Kansas Hugoton Field shall, as a condition precedent for withdrawal of such gas, pay or attribute a minimum price of not less than 11¢ per Mcf, 14.65# psia. Plaintiff's Exhibit 3.*

**10.**

Under date of January 21, 1954, plaintiff wrote to defendant, and in due course defendant received the letter identified in the record as plaintiff's Exhibit 4.*

**11.**

On the 25th day of February, 1954, plaintiff paid defendant for gas delivered to it during the month of January, 1954, by check, plaintiff's Exhibit 5.* To such check there was attached a voucher which bore the following legend:

"In full settlement of gas purchased for the period ending 1–22–54, subject to provisions of letters dated 8–25–53, and 1–21–54 with reference to gas purchased in Kansas."

On or about the 25th day of each month following, to and including the 25th day of December, 1957 (for gas delivered for the month October 22, 1957 to November 22, 1957), plaintiff paid defendant for the volumes of gas delivered during the previous month by a voucher check identical in form to plaintiff's Exhibit 5.* Defendant endorsed and cashed each such monthly voucher check.

**12.**

During the period January 1, 1954 through November 22, 1957, defendant delivered to plaintiff the total quantity of 27,862,502 Mcf of natural gas measured on a pressure base of 16.4# psia at a temperature of 60° F. All of such gas was produced by defendant from the Kansas Hugoton Field. Computed at 7¢ per Mcf, 16.4# psia, the amount due for such gas was $1,950,375.14.

**13.**

During the period January 1, 1954 through November 22, 1957, plaintiff paid to defendant for the volumes of gas purchased during such period the total sum of $3,501,077.91, such payment being computed upon a price of 11¢ per Mcf, 14.65# psia. Such payment exceeded the amount due for the gas delivered by $1,550,702.77.

**14.**

During the period January 1, 1954 through June 6, 1954, plaintiff paid to defendant $224,819.74 in excess of the amount due at 7¢ per Mcf, 16.4# psia; during the period June 7, 1954 through November 22, 1957, plaintiff paid to defendant $1,325,883.03 in excess of the amount due at 7¢ per Mcf, 16.4# psia; during the period November 23, 1957 through September 30, 1958, plaintiff paid to defendant $400,524.99 less than would have been owed if computed at the rate of 11¢ per Mcf, 14.65# psia.

**15.**

Each payment for gas at the rate fixed by the minimum price Order, 11¢ per Mcf at 14.65# psia, was made under the compulsion of the Kansas Corporation Commission's minimum price Order; and under an apprehension on the part of plaintiff that violation of the Order would

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

subject it to the penalties fixed by the Kansas Statutes for its violation; and, that violation of the Order would jeopardize its Gas Purchase Contracts in the Kansas Hugoton Field and that it would not be able to meet its obligations to supply gas.

16.

Under date of February 18, 1954, defendant wrote a letter to each of its royalty owners and joint working interest owners with respect to payments to be made by defendant for gas produced in the Kansas Hugoton Field, plaintiff's Exhibit 9.* Defendant paid each of such royalty and joint working interest owners on the basis of 11¢ per Mcf, 14.65# psia, for their portion of the gas produced by defendant from the Kansas Hugoton Field and purchased from defendant by plaintiff under the Gas Purchase Contract between the parties, during the period for which plaintiff paid defendant at such rate.

17.

On or about March 22, 1954, plaintiff filed with the Federal Power Commission a proposed F.P.C. Gas Tariff for an increase in its rates, for its sales of natural gas subject to the jurisdiction of the Commission, of an annual amount of $12,589,072, including, among other things, consideration of increased price in the cost of gas in the Kansas Hugoton Field to 11¢ per Mcf at 14.65 pressure, and said increased rates became effective, under bond, on September 23, 1954. By Federal Power Commission Order, dated May 25, 1956, in Docket No. G–2410, that Commission granted plaintiff an increase in its rates for sales, all as is reflected in the Commission's Order, plaintiff's Exhibit 29.* At hearings on said tariff plaintiff submitted evidence in the form of defendant's Exhibit 14.* Referring to a rate of 11¢ paid to defendant, and its counsel in that case, Mr. Littman, stated therein that such payments were made pursuant to filed rate schedules of

producers, including defendant, duly filed and accepted for filing by the Federal Power Commission; and such counsel objected to an exhibit offered by intervenor therein upon the grounds that such exhibit purported to show cost of gas to plaintiff below that which was actually paid to the producers and not in accordance with the effective filed rate of such producers for gas produced in the Kansas Hugoton Field and that such exhibit thus constituted a collateral attack on the effective rate schedules of such producers. In describing the theory upon which the witness prepared the exhibit, the attorney, Littman, said to the Commission:

"Mr. Van Scoyac's theory in making this adjustment is that these field prices should be reduced because they reflect prices payable under an order of the Kansas Corporation effective January 1, 1954, prescribing a minimum field price in the Kansas-Hugoton Field of 11 cents per Mcf; that he, and I use his phrase, understands that that order is being challenged in the Courts by Cities Service Gas Company and others, and that the Cities Service Gas Company is paying those minimum prices upon an understanding with the vendors that should the order be held invalid, it would receive a return of the amounts paid in excess of what was due under the then effective prices, and the minimum price order."

The Federal Power Commission was aware that plaintiff was paying its producers the Kansas-ordered 11¢ payments under an arrangement whereby such producers would reimburse plaintiff for overpayments in the event the Kansas 11¢ price Order was modified or set aside upon judicial review; and that plaintiff was challenging the validity of such minimum price Order then pending. The Order in such case, plaintiff's Exhibit 29*, evidences that the Federal Power Commission was aware of such facts.

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

**18.**

In the course of the hearings before the Federal Power Commission upon plaintiff's application for increased rates described above, witness Hofsess, one of plaintiff's employees, testified in response to the following question:

"Q. Isn't it a fact that the payments which are being made pursuant to such order to producers which are in excess of the prices paid in 1953 have been made with the understanding that should the order be held invalid, the excessive prices would be returned to Cities Service Gas Company.

"A. I believe that is correct."

On February 3, 1955, in response to questions on cross-examination by Mr. Connor, the witness Hofsess produced the January 21, 1954 letter, plaintiff's Exhibit 4*, and same was read into the record.

The annual reports of plaintiff to the Federal Power Commission for the years 1953 through 1957 informed such Commission that the Kansas-ordered 11¢ payments were being made to producers under an arrangement whereby the producers would reimburse plaintiff for overpayments in the event the Kansas 11¢ price Order was modified or set aside upon judicial review; and that plaintiff was challenging the validity of such minimum price Order then pending. Plaintiff's Exhibits 18* through 22*.

**19.**

On January 14, 1954, plaintiff instituted an action for judicial review of the Kansas minimum price Order in the District Court of Finney County, Kansas; there was no request by plaintiff that said action be set for trial made at any time; the court tried said action on April 26, 1956, and on May 14, 1956, entered its journal entry of judgment therein that said Order should be upheld and sustained, which judgment was affirmed by the Supreme Court of Kansas, and the judgment of that court was reversed by the Supreme Court of the United States on January 20, 1958, in Cities Service Gas Co. v. State Corporation Commission, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed. 2d 355.

**20.**

Following the decision of the United States Supreme Court in Phillips Petroleum Co. v. Wisconsin, 347 U.S. 672, 74 S. Ct. 794, 98 L.Ed. 1035, the Federal Power Commission on July 16, 1954, issued its Order No. 174, 18 C.F.R. 154.91–154.-103, 157.23–157.29, and on August 6, 1954, superseded the same with its Order 174–A, 18 C.F.R. 154.91–154.102, 157.23–157.29, and amended same by its Order 174–B, 18 C.F.R. 154.91–154.102, 157.23–157.29. (Hereinafter the Orders collectively are referred to as the series of 174 Orders.)

**21.**

Among other things, the series of 174 Orders provided that producers of natural gas, such as defendant, should file with the Federal Power Commission their "rate schedule" and defined such "rate schedule" as the "basic contract and all supplements or agreements amendatory thereof effective and applicable on and after June 7, 1954," showing the rates and charges, terms and conditions applicable to the sale of such gas.

**22.**

Under date of September 20, 1954, defendant tendered to the Federal Power Commission for filing its "Rate Schedule." Plaintiff's Exhibit 25 * is the letter of transmittal with which defendant forwarded its "Rate Schedule." Defendant's "Rate Schedule" is plaintiff's Exhibit 26 * and is identified by the FPC as "United Producing Company, F.P.C. Gas Rate Schedule No. 4." Defendant also at said time filed with the Federal Power Commission its application for a Certificate of Public Convenience and

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

Necessity in the form of defendant's Exhibit 2.*

With said letter of transmittal, defendant also tendered to the FPC pursuant to Order 174–A, a sample billing for the period June 23 to July 22, 1954, defendant's Exhibit 41.* Such sample billing recited, among other things: "280,805 M.Cub.Ft. @ 11¢ per M(P.B. 14.65#) * * * $30,888.55."

### 23.

Defendant's Gas Rate Schedule No. 4 included, among other documents not pertinent here, the Gas Purchase Contract between the parties, plaintiff's Exhibit 2 * and plaintiff's January 21, 1954 letter, plaintiff's Exhibit 4.*

### 24.

On September 15, 1954, and in the due course of the regular mail, defendant mailed to plaintiff and plaintiff received a copy of defendant's letter of transmittal addressed to the Federal Power Commission, plaintiff's Exhibit 25,* together with a copy of defendant's application to the Federal Power Commission for a Certificate of Public Convenience and Necessity, defendant's Exhibit 2.* Defendant did not mail to plaintiff copies of the documents listed in the September 20, 1954 letter, plaintiff's Exhibit 25.*

### 25.

At about Christmas, 1954, plaintiff examined the FPC rate filings made by the independent producers of natural gas from whom it purchased gas. From such examination, plaintiff knew that defendant had filed with the FPC as its "Rate Schedule" the documents which made up defendant's FPC Gas Rate Schedule No. 4.

On February 1, 1955, plaintiff's attorney in hearings before the Federal Power Commission upon plaintiff's application for increased rates, stated:

"We are here dealing with Stanolind. We are here dealing now with arm's length transactions where Cities Service Gas Company has paid out-of-pocket, to arm's length vendors, this money, pursuant to filed rate schedules of these producers, duly filed and accepted for filing by the Federal Power Commission pursuant to Order 174–A and 174–B."

### 26.

On December 1, 1954, the Federal Power Commission caused a minute to be made in its records with respect to defendant's FPC Gas Rate Schedule No. 4. Defendant's Exhibit 4 * is a copy of that minute. Such minute accurately reflects the meeting and acts of the Commission as recited therein.

### 27.

Under date of January 18, 1955, the FPC mailed a writing to defendant with respect to defendant's Gas Rate Schedule No. 4. Defendant's Exhibit 6 * is a copy of that writing.

### 28.

Under date of June 14, 1957, defendant wrote a letter to the Federal Power Commission and transmitted documents therewith to reflect defendant's contractual right to be reimbursed by plaintiff for 50% of the Kansas Severance Tax imposed by General Statutes of Kansas 1957 Supp. 79–4201 et seq. A copy of such letter of transmittal and the documents transmitted therewith is defendant's Exhibit 7.* On the same date, defendant forwarded a copy of such letter and the documents attached thereto to plaintiff and plaintiff received same in the due course of the regular mail.

### 29.

Under date of July 10, 1957, the FPC caused a minute to be made in respect of the filing described in Finding of Fact No. 28. Defendant's Exhibit 9–A * is a copy of such minute. Such minute accurately reflects the meeting and acts of the Commission as recited therein.

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

**30.**

Under date of July 26, 1957, the Federal Power Commission mailed to defendant defendant's Exhibit 11.*

**31.**

On July 29, 1957, defendant transmitted to plaintiff a copy of defendant's Exhibit 11,* and same was received by plaintiff in the due course of mail after said date.

**32.**

Under date of December 31, 1956, the Federal Power Commission by Order issued to defendant a Certificate of Public Convenience and Necessity. Defendant's Exhibit 13 * is a copy of that Order.

**33.**

Plaintiff filed no protest, objection, petition in intervention, application for rehearing, application for stay, or any other pleading as to any action of the Federal Power Commission with respect to defendant's Rate Schedule and Supplements 1 through 7 and Supplement 8 thereto, or the filing of same; nor did plaintiff bring any proceeding for review in any court of appeals concerning any such action. It is the Court's view that there was nothing for plaintiff to protest, object to, apply for intervention, rehearing or stay, or to seek review of any such action of the Federal Power Commission because defendant's filing was in accordance with the plaintiff's view then, and the plaintiff's position now, that the Rate Schedule called for the rate fixed under the basic contract and the agreements amendatory thereof.

**34.**

There were no statements prior to or during the making of such payments by any official of the State of Kansas or any officer or employee of defendant to plaintiff or any of its agents or officers threatening any civil or criminal proceedings or institution of receivership proceedings if payments at 11¢ were not made; there was no statement prior to or during the making of such payment by any officer or employee of defendant to plaintiff that there would be any interruption in the delivery of gas if payment at said rate of 11¢ per Mcf was not made; and the delivery of gas by defendant to plaintiff continued without any interruption during all the times involved herein.

**35.**

During the period from January 1, 1954, through November 22, 1957, defendant paid royalties based upon sums received from plaintiff for the gas involved herein which were $193,837.85 larger than the same would have been based on sums received for gas sold at a rate of 7¢ per Mcf at 16.4# pressure base.

## CONCLUSIONS OF LAW

From the above and foregoing facts the Court enters the following conclusions of law:

**1.**

The Court has jurisdiction of the parties and of the subject matter of this action. 28 U.S.C.A. § 1332.

**2.**

Plaintiff was at all times pertinent hereto a natural gas company as defined in the Natural Gas Act, 15 U.S.C.A. § 717 et seq.

**3.**

Defendant is an independent producer of natural gas as defined in the Natural Gas Act, 15 U.S.C.A. § 717 et seq. and the series of 174 Orders.

**4.**

■■ The Kansas Corporation Commission's minimum price Order, dated December 2, 1953, was invalid because sales of natural gas for resale in interstate commerce cannot be regulated by a State, but are subject to the exclusive regulation by the Federal Power Com-

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

mission. Cities Service Gas Co. v. State Corporation Commission, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355.

5.

■ The Kansas minimum price Order was void *ab initio* and in its entirety and did not affect the price for gas at any time, either before or after June 7, 1954, or whether such gas was sold in interstate or intrastate commerce. Cities Service Gas Co. v. State Corporation Commission of Kansas (1959), 184 Kan. 540, 337 P.2d 640, cert. denied 361 U.S. 836, 80 S.Ct. 89, 4 L.Ed.2d 77.

6.

■ Each of the payments made at the 11¢ price by plaintiff to defendant was made under the compulsion of the Kansas minimum price Order, and under compulsion of the business hazards which confronted plaintiff, prior to the time the Order was declared invalid, which would follow from plaintiff's failure to comply with the Order. Therefore, the Court concludes as a matter of fact and as a matter of law, that each of such payments in excess of the contract price of 7¢ per Mcf was an involuntary payment.

7.

Defendant urged that plaintiff was not threatened by defendant or the State of Kansas and that plaintiff's failure to violate the Order made the payments voluntary. The Court views this matter as did Judge Rives in Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 246 F. 2d 915 at 920:

> "Scant respect would be accorded to the laws of the State of Oklahoma, if it were held that Natural had to go further and speculate on whether Panoma actually would have ceased delivering gas if Natural had refused to pay the increased price."

8.

Plaintiff is entitled to recover the difference between the contract price, 7¢ per Mcf, 16.4# psia, and the ordered price, 11¢ per Mcf, 14.65# psia, paid under the compulsion of the invalid Kansas Order in line with the principles of law adopted by both the trial court and the Court of Appeals in Natural Gas Pipeline Co. of America v. Harrington, D.C., 139 F.Supp. 452; Id., 5 Cir., 246. F.2d 915.

9.

■ Plaintiff's letter dated January 21, 1954, plaintiff's Exhibit 4 *, constituted a tender of the minimum price of 11¢ per Mcf upon condition that the difference between the contract price, 7¢ per Mcf, 16.4# psia, and the price paid in compliance with the invalid Kansas Order, be refunded by defendant to plaintiff if and when that Order should be adjudged invalid. The subsequent acceptance by defendant of the monthly payments tendered by voucher check, containing a notation that payment was made subject to the terms of the January 21 letter, constituted an acceptance by defendant of plaintiff's offer to pay upon said condition of refund. Therefore, there is a binding contract between the parties for defendant to make the refund sued for here.

10.

This action does not involve payments for gas purchased prior to January 1, 1954. The Kansas Corporation Commission's 8¢ minimum price Order, effective March 1, 1949, was vacated and superseded by the Commission's 11¢ minimum price Order, effective January 1, 1954, and the 8¢ Order is void and unenforceable for the same reasons that the 11¢ Order is.

11.

The standard gas measurement Order promulgated by the Kansas Corporation Commission, dated May 20, 1953, defendant's Exhibit C *, did not increase the price for gas produced in Kansas. To construe the Order as increasing the

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

price for gas would render the Order invalid under Cities Service Gas Co. v. State Corporation Commission of Kansas, 355 U.S. 391, 78 S.Ct. 381, 2 L.Ed.2d 355, and the cases cited therein.

### 12.

Under the Natural Gas Act, 15 U.S.C. A. § 717 et seq., and the series of 174 Orders of the Federal Power Commission made pursuant thereto, the rate schedule of an independent producer, such as defendant, is defined as the "basic contract and all supplements or agreements amendatory thereof, effective and applicable on and after June 7, 1954." The series of 174 Orders did not purport to effect any change in the contractual rights of the parties as they existed on June 7, 1954.

### 13.

Within the definition of "rate schedule" as used in the series of 174 Order, defendant's rate schedule in this case consists of the "basic contract," the March 12, 1948 Gas Purchase Contract (plaintiff's Exhibit 2 *), and the "agreements amendatory thereof," plaintiff's January 21, 1954 letter (plaintiff's Exhibit 4 *), together with other documents which are not pertinent to this dispute.

### 14.

Defendant's effective filed rate is the rate agreed upon between the parties. Defendant's effective filed rate was 11¢ subject to the condition of refund of the difference between the 11¢ rate, paid under compulsion of the invalid Order, and the 7¢ rate fixed by the Gas Purchase Contract; or a net 7¢ rate and since the Kansas minimum price Order was invalid, defendant's effective filed rate, to be enforced by this Court, is the rate set forth in the Gas Purchase Contract, 7¢ per Mcf, 16.4# psia.

### 15.

The writings of the Federal Power Commission addressed to defendant, defendant's Exhibits 6 * and 11 *, and the minutes of the Federal Power Commission, defendant's Exhibits 4 * and 9–A *, were acknowledgements of the receipt of defendant's filed rate schedule and the supplements thereto. Neither the writings nor the minutes nor any act of the Federal Power Commission fix or approve any rate; interpret the contract between the parties; nor vary the contract between the parties.

### 16.

The filing made by defendant with the FPC on June 14, 1957, defendant's Exhibit 7 *, relating to the Kansas Severance Tax (held invalid in State v. Kirchner, 182 Kan. 622, 322 P.2d 759) did not constitute any change in defendant's basic filed rate. Such filing only resulted in Commission sanction of the provision of the Gas Purchase Contract requiring plaintiff to reimburse defendant to the extent of 50% of the Kansas Severance Tax that had been paid and was being paid by defendant.

### 17.

The fact that defendant has paid portions of the overpayment made to it to its royalty owners and joint working interest owners does not mitigate against plaintiff's recovery herein.

### 18.

The fact that plaintiff reduced its hazard of ultimate irretrievable loss by obtaining an increase in its rates for its sales subject to the jurisdiction of the Federal Power Commission does not mitigate against plaintiff's recovery here. The Order of the Federal Power Commission in that rate case, plaintiff's Exhibit 29 * requires plaintiff to refund to customers who purchased gas under such increased rates, a portion of the money recovered here according to the formula set forth in that Order.

### 19.

Nothing which plaintiff did in the prosecution of its application for increased rates in Docket G–2410 constitut-

---

* Each Exhibit referred to in these Findings of Fact and Conclusions of Law is incorporated herein by reference.

ed either acquiescence in the validity of the 11¢ Order; waiver of plaintiff's right to refund of the overpayments; or estoppel of plaintiff to claim the refund sued for here.

20.

 Each of plaintiff's alternative causes of action, under the theories of restitution and contract, accrued upon the date of the judicial determination of the invalidity of the Kansas minimum price Order by the United States Supreme Court, January 20, 1958. No statute of limitations had run as to either of plaintiff's causes of action prior to the date this action was filed.

21.

Each of plaintiff's alternative causes of action accrued on January 20, 1958. This action was filed on July 28, 1958. There is no requirement under the Statutes of Oklahoma that plaintiff either plead or prove that its claim against defendant had been assessed for taxation as intangible personal property, or that such tax has been paid, under the provision of 68 O.S.1951 § 1501 et seq.

22.

The amount sued for by plaintiff was a liquidated amount, and plaintiff's right to recover was vested on January 20, 1958. Plaintiff is entitled to recover interest on the amount due from January 20, 1958.

23.

The Court concludes that the debt must bear interest as a matter of right at the rate of 6% per annum, same being the legal rate of interest in Oklahoma.

24.

Plaintiff is entitled to recover from defendant the principal sum of $1,550,702.-77, together with interest thereon at the rate of 6% per annum from January 20, 1958.

25.

Defendant is not entitled to recover anything on its counterclaim.

