See also 201 F.Supp. 679.

**BROOKLYN UNION GAS COMPANY,** Consolidated Edison of New York, Inc., Elizabethtown Consolidated Gas Company, Long Island Lighting Company, Philadelphia Electric Company, Public Service Electric & Gas Company, South Jersey Gas Company, Piedmont Natural Gas Co., the United Gas Improvement Company, Public Service Co. of North Carolina, Inc., Delaware Power & Light Co., Plaintiffs,

v.

**TRANSCONTINENTAL GAS PIPE LINE CORPORATION,** Socony Mobil Oil Company, Inc., the Ohio Oil Company, Defendants.

Civ. A. Nos. 12474, 12482.

United States District Court
S. D. Texas,
Houston Division.
June 29, 1960.

Andrews, Kurth, Campbell & Jones, W. M. Streetman, F. L. Andrews, Alfred H. Ebert, Jr., and Lewis T. Sweet, Jr., Houston, Tex., for plaintiffs.

Fulbright, Crooker, Freeman, Bates & Jaworski, Austin C. Wilson and Richard L. McGraw, Houston, Tex., for defendant Transcontinental Gas Pipe Line Corp.

Vinson, Elkins, Weems & Searls, Thomas Fletcher, J. D. McDaniel and J. W. McCartney, Houston, Tex., for defendant Socony Mobil Oil Co., Inc.

Clayton L. Orn and Robert M. Vaughan, Findley, Ohio, James D. Parriott, Washington, D. C., Warren B. Leach, Jr., J. O. Terrell Couch and W. Hume Everett, Houston, Tex., for defendant Ohio Oil Co.

INGRAHAM, District Judge.

These consolidated proceedings consist of actions in which plaintiffs, who are distributors of natural gas in eastern seaboard areas, seek restitution of monies paid by defendant Transcontinental Gas Pipe Line Corporation (Transco) to defendants Socony Mobil Oil Company, Inc. (Mobil) and The Ohio Oil Company (Ohio) through increases in price for natural gas sold and delivered to Transco. The case is submitted upon the pleadings, affidavits, and motions for summary judgment of all parties concerned.

Transco operates under certificate from the Federal Power Commission an interstate natural gas pipe line from Texas to New York. Prior to June 7, 1954, Transco entered into separate natural gas purchase and sales contracts with Mobil and Ohio, covering natural gas from the West Gueydan Field in Vermillion Parish, Louisiana, and from the North Markham-North Bay City Field in Matagorda County, Texas, respectively. The Mobil contract included a "favored nations" clause providing for increases in price, while the Ohio contract contained a provision for periodic and tax reimbursement price increases. Prior to June 7, 1954, Transco commenced purchasing gas under these contracts, commingling it with other gas in its line and delivering it to customers, including plaintiffs, along its pipe line. Mobil's contract price on June 7, 1954, was 9.-79150 cents per m. c. f., while Ohio's contract price on said date was 8.730376 cents per m. c. f.

On June 7, 1954, the Supreme Court of the United States held in Phillips Petroleum Co. v. State of Wisconsin, 1954, 347 U.S. 672, 74 S.Ct. 794, 98 L.Ed. 1035, that Phillips, a natural gas producer and gatherer, was a "natural gas company" within the meaning of that term as defined in the Natural Gas Act, 15 U.S.C.A. § 717 et seq. Both Mobil and Ohio were and are engaged in the business of producing, gathering, and selling natural gas in interstate commerce. The Phillips decision is applicable to both of them. Thus the rates at which they sell natural gas are subject to regulation by the Federal Power Commission.

On July 16, 1954, the Federal Power Commission issued its Order No. 174, 19 F.R. 4534. Among other things, this order required every independent pro-

ducer engaged in the interstate transportation or sale of natural gas since June 7, 1954, to file with the Commission copies of rate schedules setting forth all rates and charges for the sale of natural gas which were in effect on June 7, 1954. The order further provided that no change could be made in these June 7, 1954, rates without first giving 30 days' notice of such change pursuant to Section 4(d) of the Natural Gas Act. Order No. 174–A of August 6, 1954, 19 F.R. 5081, and succeeding amendments, simplified and clarified the procedures by which producers apply for a certificate of public convenience and necessity but did not change the foregoing rate requirements.

Pursuant to Section 19(b) of the Natural Gas Act, Mobil and Ohio each filed a petition for review of Order No. 174–A in the United States Court of Appeals for the Fifth Circuit, questioning whether the Commission was empowered to regulate the price increase provisions of their contracts with Transco as changes in rate. These petitions sought a stay of that order concerning operations of Mobil and Ohio, including their contracts with Transco. In November 1954 a stay of Order No. 174–A as to Mobil and Ohio was issued by the Court of Appeals. Later, on June 30, 1956, the petitions for review were dismissed, though certification of the opinion and judgment to the Federal Power Commission was stayed by the court to permit the filing of applications for certiorari in the Supreme Court of the United States, which applications were denied on January 14, 1957. After denial of certiorari, the stay orders were dissolved on February 1, 1957. Magnolia Petroleum Company et al. v. Federal Power Commission, 5 Cir., 1956, 236 F.2d 785.

Only after denial of certiorari did Mobil and Ohio file their Transco contracts with the Federal Power Commission as rate schedules or otherwise. During the pendency of the stay order from February 1, 1955, through January 31, 1957, charges were made to Transco by both Mobil and Ohio in excess of the rates which were in effect on June 7, 1954.

Though made pursuant to the price increase provisions of the Transco contracts, such charges were made without giving 30 days' notice thereof to the Federal Power Commission and to the public in accordance with the provisions of Section 4(d) of the Natural Gas Act and as required by Order No. 174–A. The amounts involved in this controversy are the payments in excess of the rates in effect on June 7, 1954, made by Transco to Mobil and Ohio during the period from February 1, 1955, through January 31, 1957.

On November 26, 1954, Transco filed rate schedules with the Federal Power Commission providing for increases in the rates to be charged by Transco to plaintiffs and other public utility and industrial customers for natural gas service. Another filing seeking additional increases was made by Transco on January 20, 1955. The Federal Power Commission consolidated these matters and commenced hearings on June 20, 1955, which continued for some months. Meanwhile the rates filed on November 26, 1954, went into effect on February 1, 1955. With matters in this status, each plaintiff entered into an agreement with Transco on October 5, 1955, for the complete settlement of Transco's rate proceedings before the Federal Power Commission, which was made a part of the record of the proceedings before the Commission.

On November 7, 1955, the Federal Power Commission issued an order approving the proposed rate settlement. Among other things this order contained the following specific provision:

"In the event any of the suppliers of Transco whose rates are currently in effect under an undertaking or under bond, or whose rates are currently being charged under court stay orders shall be required to make refunds to Transco in respect to gas supplied under such rates, such portion, if any, of said refund attributable to natural gas purchased from said supplying company or companies by Transco, after Transco's increased

rates were permitted to become effective to cover such increased cost of gas, shall be refunded to Transco's utility customers within 60 days after receipt of such refund by Transco * * *."

Both the agreement and the order provide a detailed method of computing the refund to be paid to each of Transco's utility customers. On January 10, 1959, all plaintiffs, except Delaware Power & Light Company, instituted Civil Action No. 12,474 in this court against Transco, Mobil, and Ohio. On January 12, 1959, Delaware Power & Light Company filed a similar action in the District Court of Harris County, Texas, 127th Judicial District, under Docket No. 520,558, which cause was thereafter removed to this court by Transco as Civil Action No. 12,-482 and was later consolidated with C.A. No. 12,474. In C.A. 12,474 plaintiffs seek a total recovery in the amount of $912,-414.72, plus interest, and separately claim from Mobil and Ohio the sums of $494,-626.64 and $417,788.08, respectively. In C.A. 12,482 the total amount sought is $25,378.60, plus interest, while the separate claims against Mobil and Ohio are $13,757.92 and $11,620.68, respectively.

The basis of plaintiffs' action against Mobil and Ohio is that the contract rates in effect between Transco and Mobil and Ohio on June 7, 1954, were the only lawful rates which could be charged for gas delivered by Mobil and Ohio to Transco during the period from February 1, 1955, through January 31, 1957. During this period the charges in excess of the alleged lawful rate were passed on to plaintiffs and other customers of Transco. As the real parties in interest, plaintiffs now seek restitution of what they consider to be their just portion of the excess charges. Asserting Transco's claims against Mobil and Ohio, they maintain that Transco has effectively assigned to plaintiffs said claims in its answer, counter-claim, and cross-claim.

Against Transco plaintiffs claim any monies that it may recover from Mobil and Ohio, since the agreements and order provide for such a refund in the event any of the suppliers of Transco, whose rates were being charged under court stay orders, were required to make refunds to Transco. They contend, however, that Transco is liable to them regardless of whether it has collected from Mobil and Ohio and even though it might not have collected had it vigorously pursued its remedies. They rest Transco's said liability upon an implied obligation arising under the refund provision of the settlement agreements and order to exercise reasonable diligence to secure the refunds due Transco, including the timely filing and good faith prosecution of suits, if necessary, against Mobil and Ohio. They maintain that Transco has not fulfilled this obligation by merely filing a cross-action for declaratory relief in the present action and failing to pursue vigorously its rights against Mobil and Ohio in plaintiffs' behalf.

Mobil contends that neither plaintiffs nor Transco can recover any monies from it, since the court does not possess the legislative power of rate-making and cannot fix or determine what were the just and reasonable rates for Mobil's gas sold to Transco and cannot award reparations. It claims that the Federal Power Commission approved rates in Transco's rate proceeding designed to recover Transco's cost of service, including recoupment of charges paid Mobil by Transco, on representations that such costs, expenses, and rates which would recoup them were proper, just, and lawful as the Natural Gas Act requires. Whereby Mobil argues that plaintiffs and Transco have no right of recovery and ought to be estopped from asserting that such costs and expenses are unlawful, unjust, and unreasonable. It maintains that the Fifth Circuit's stay order fully protected Mobil from any refund. It cites various reasons why recovery by plaintiffs would be inequitable and asserts that Transco cannot recover upon its counter-claim and cross-claim for declaratory judgment.

Ohio contends that the Fifth Circuit's stay order granted it full immunity from the requirements of Order No. 174–A and of Section 4 of the Natural Gas Act and

that there can be no recovery because the court of appeals did not condition the stay on the giving of any bond or any agreement to refund. It argues that the court is not authorized to award reparations. It would show that plaintiffs' claim, if any ever existed, is now barred by limitations, citing Article 5526, Revised Civil Statutes of Texas, which applies to debts where the indebtedness is not evidenced by a contract in writing. Ohio then sets forth the equitable considerations supporting judgment in its favor and against judgment for plaintiffs.

Transco contends that the real controversy is between plaintiffs and Mobil and Ohio and that its only obligation, in the nature of a stakeholder's or interpleader's, is to pay over and account to plaintiffs for any monies that plaintiffs may recover from Mobil and Ohio and that the court may direct be paid to Transco by Mobil and Ohio for distribution to plaintiffs. It maintains that plaintiffs have failed to state an independent claim against Transco arising out of the refund provision of the settlement agreements and order.

The court believes that the following actions should be taken on the motions for summary judgment. Plaintiffs' first motion for summary judgment against Mobil and Ohio should be granted, while their second motion against Transco should be denied. Transco's first and second motions for summary judgment should be granted. The motions for summary judgment of Mobil and Ohio should be denied.

This case can be decided on motions for summary judgment in favor of plaintiffs and Transco, since there is no genuine issue as to any material fact and since said moving parties are entitled to judgments as a matter of law. Mobil and Ohio contend that there are genuine issues of material fact, namely, whether any of the gas sold to Transco was resold to plaintiffs and, if so, what portion reached each plaintiff and what amounts of money, if any, may be recovered by each plaintiff from Mobil and Ohio. Those alleged issues are irrelevant because plaintiffs are asserting Transco's cause of action.

Mobil and Ohio do not contest the amount of gas delivered to Transco nor the amounts charged therefor. The higher rates charged by Mobil and Ohio resulted in greater charges to plaintiffs by Transco. What distribution of overpayments to Mobil and Ohio is made to Transco's customers is a matter between Transco and its customers. It is no ground upon which Mobil and Ohio can avoid repayment, if they are protected from further payment or a multiplicity of suits.

The amounts that plaintiffs seek to recover against Mobil and Ohio are shown in Exhibit "E" attached to plaintiffs' original complaints, which amounts are certified by the affidavit of J. T. Duncan, Assistant to the Financial Vice-President of Transco. All of the plaintiffs are utility customers of Transco; each was a party to the settlement agreements with Transco which were approved by the Federal Power Commission. The amounts alleged to be due to each plaintiff, as set forth in Exhibit "E", were computed in accordance with the formula stated by the Federal Power Commission in its order approving the rate settlement with Transco.

Plaintiffs are the assignees of Transco's cause of action and are the real parties in interest. Transco effectively assigned its claims against Mobil and Ohio to plaintiffs by its pleadings. See Transco's answer, counter-claim, and cross-claim, p. 8, par. (c); p. 15, par. 33; and p. 22, par. 19. All the parties to the assignment are before the court. So long as Mobil and Ohio can satisfy their obligation to Transco by paying plaintiffs, which Transco freely states, any defense to the assignment which could be asserted by Transco in a suit by plaintiffs against Transco is of no consequence to Mobil and Ohio.

■ Plaintiffs' claims are not barred by limitations, since neither the two-year period of Article 5526 nor the four-year period of Article 5527, Vernon's Texas Civil Statutes, would bar recovery. Article 5526 applies to actions for debt where the indebtedness is not evidenced by a

contract in writing. Covering many actions for "money had and received", Ohio contends that said statute applies to the case at bar. Article 5527 refers to actions for debt where the indebtedness is evidenced by or founded upon any contract in writing. Plaintiffs contend that the latter statute governs the case at bar. The controlling question, however, is the date upon which the cause of action arose. It is evident that the cause of action did not arise until the day when the stay orders were dissolved, namely, February 1, 1957. The excess rates were lawfully collected during the pendency of the stay orders. Natural Gas Pipeline Co. of America v. Harrington, 5 Cir., 1957, 246 F.2d 915. Since these actions were filed on January 10 and 12, 1959, it is apparent that they are not barred by either the two-year or the four-year statute of limitations; nor can plaintiffs' claims be considered barred by laches, since no extraordinary circumstances exist whereby said claims should be barred before the period of limitations has run. Culver v. Pickens, 1943, 142 Tex. 87, 176 S.W.2d 167.

■ The court may decide the merits of this controversy by recognizing and determining the lawful rates on June 7, 1954. Magnolia Petroleum Company v. Texas Illinois Natural Gas Pipeline Company, S.D.Tex., 1954, 130 Fed.Supp. 890. By finding the lawful rates as established by order of the Federal Power Commission, the court is not fixing any just or reasonable rate or granting reparations. Its action is solely ancillary to determining the effect of the stay orders and their dissolution. The rate settlement between plaintiffs and Transco does not preclude such a determination on grounds of estoppel because its refund clause plainly contemplated that there might be refunds that would be passed along to plaintiffs.

■ Plaintiffs are entitled to recover on the merits because the only lawful rates from June 7, 1954, until Mobil and Ohio received approval from the Federal Power Commission of different rates were the contract rates in effect on June 7, 1954. Under Section 4 of the Natural Gas Act and Order 174–A the contract rate in effect on June 7, 1954, the date of the Phillips decision, was the only lawful rate until changed by filing with the Federal Power Commission. This is true even though the contract rate was unfiled. Any rate changes provided for in the contract, filed or unfiled, whether by virtue of a "favored nations" or "escalation" clause or otherwise, constitute rate changes under the Natural Gas Act and are forbidden in the absence of compliance with the filing provisions of the Act. Natural Gas Pipeline Co. of America v. Harrington, supra; Bel Oil Corporation v. Federal Power Commission, 5 Cir., 1958, 255 F.2d 548; Mississippi Power & Light Co. v. Memphis Natural Gas Company, 5 Cir., 1947, 162 F.2d 388; Cities Service Gas Producing Co. v. Federal Power Commission, 10 Cir., 1956, 233 F.2d 726; Amerada Petroleum Corporation v. Federal Power Commission, 10 Cir., 1956, 231 F.2d 461; Phillips Petroleum Co. v. Federal Power Commission, 10 Cir., 1958, 258 F.2d 906; Episcopal Theological Seminary v. Federal Power Commission, D.C., 1959, 269 F.2d 228.

The stay orders issued by the Court of Appeals for the Fifth Circuit at the request of Mobil and Ohio temporarily allowed them to increase their prices above the June 7, 1954, level without approval by the Federal Power Commission. When those stay orders were dissolved and Mobil and Ohio filed their contracts with the Commission, the filings were accepted at the June 7, 1954, level. A duty of restitution arose, requiring Mobil and Ohio to restore to Transco amounts collected during the pendency of the stays in excess of the June 7 rate. Natural Gas Pipeline Co. of America v. Harrington, supra; Arkadelphia Milling Co. v. St. Louis S. W. R. Co., 1919, 249 U.S. 134, 39 S.Ct. 237, 63 L.Ed. 517; Berthold-Jennings Lumber Co. v. St. Louis, I. M. & S. Ry. Co., 8 Cir., 1935, 80 F.2d 32.

■ The stay orders cannot be construed as protecting Mobil and Ohio in the receipt of overcharges for two reasons: (1) courts do not have the author-

ity to establish rates and construing the stay orders as approval of the increased rates imputes to the court an attempt to do indirectly what it cannot do directly and (2) although the stay orders, until dissolved, relieved Mobil and Ohio of the necessity, for the time being, of filing in accordance with Order No. 174–A, the stay orders neither by their terms nor by implication provided that Mobil and Ohio could retain monies collected during the pendency of the stay orders nor did the orders relieve them from the consequences of their failure to comply with Order 174–A. A stay order does not adjudicate rights but merely preserves the status quo. Scripps-Howard Radio, Inc. v. Federal Communications Commission, 1942, 316 U.S. 4, 62 S.Ct. 875, 86 L.Ed. 1229.

At the time the stay orders were issued, the lawful rates had been established as the contract rates of June 7, 1954. Natural Gas Pipeline Co. v. Harrington, supra. Since the Fifth Circuit could not authorize an increase in the lawful rate, the stay orders could not have had that effect, and the court could have intended nothing more than to permit Mobil and Ohio to collect the higher rates until the final determination of that case. In the Berthold-Jennings and Arkadelphia cases the railroads obtained injunctions against the state railroad commission's enforcement of the established maximum freight rates, which injunctions permitted the railroads to collect higher rates. After the dissolution of the injunctions, the railroads were required to repay the overcharges they had collected on the theory of restitution. The fact that no bond had been required of the railroads after the granting of the permanent injunction did not alter the result.

In this case Mobil and Ohio obtained stays of the Federal Power Commission's order, which permitted them to collect higher rates. After the dissolution of the stay orders, they must repay the charges they have collected in excess of the lawful rates. In collecting the increased rates under the stay orders, they assumed the risk of being required to refund them if the litigation terminated adversely to them.

Since plaintiffs can recover against Mobil and Ohio, it is unnecessary to determine whether they state an independent claim against Transco arising out of the refund provision of the settlement agreements and order.

Plaintiffs' first motion for summary judgment against Mobil and Ohio will be granted. Their second motion for summary judgment against Transco will be denied. Transco's first and second motions for summary judgment will be granted. The motions for summary judgment of Mobil and Ohio will be denied.