CITIES SERVICE GAS COMPANY, a corporation, Plaintiff,

v.

SKELLY OIL COMPANY, a corporation, Defendant.

Civ. A. No. 1981.

United States District Court
D. Delaware.

Aug. 11, 1958.

**32**

John J. Morris, Jr., and Howard L. Williams (of Morris, James, Hitchens & Williams), Wilmington, Del., C. C. Mount, O. R. Stites, Gordon J. Quilter, Oklahoma City, Okl., of counsel, for plaintiff.

David F. Anderson and Richard F. Corroon (of Berl Potter & Anderson), Wilmington, Del., C. L. Swim, Hawley C. Kerr, Tulsa, Okl., for defendant.

LAYTON, District Judge.

This is a common-law action brought to recover for breaches of written contracts, and, in the alternative for breaches of implied contracts resulting in unjust enrichment. The action was instituted originally in the Superior Court of Delaware for New Castle County and was removed by the defendant to this Court. Plaintiff has moved to remand the case to the Superior Court.

Both the plaintiff and the defendant are Delaware corporations. The Complaint reveals that the business of plaintiff is purchasing, transporting and selling natural gas in interstate commerce for resale for ultimate consumption. Plaintiff transports the purchased gas by an integrated pipeline system through Texas, Oklahoma and Kansas into Missouri and Nebraska where the gas is sold. Defendant is a producer of natural gas in Oklahoma, and sells gas to plaintiff.

The first count alleges that on August 28, 1945, plaintiff and defendant entered into a "Gas Purchase Contract" and a supplement thereto, designated "Letter Agreement", which collectively, are called the "Gas Purchase Contracts". Those contracts provide for the sale and the delivery by defendant to plaintiff of natural gas to be produced by defendant from specified gas reserves in the Guymon-Hugoton Field, in Texas County, Oklahoma.

The period covered by the Gas Purchase Contracts was from August 28, 1945, to April 15, 1965, and as long thereafter as gas is produced from the specified reserves in paying quantities. The price to be paid by plaintiff to defendant for the gas is specified in the Contracts.

By an amendment to the Gas Purchase Contracts on November 29, 1950, the parties adjusted upward the prices to be paid for the gas after March 1, 1951; and, effective March 1, 1951, plaintiff paid, and defendant accepted as full payment, the adjusted contract prices, until August 1, 1952.

On July 29, 1952, the Corporation Commission of Oklahoma entered an order, effective August 1, 1952, fixing a minimum price to be paid at the well head for all gas produced in the Guymon-Hugoton Field, Texas County, Oklahoma, plus the reasonable cost of gathering such gas. That minimum price was in excess of the price which had been agreed upon by the parties in the Gas Purchase Contracts and which was then being paid by plaintiff and was being accepted by defendant. The State's Minimum Price Order imposed criminal sanctions for its violation.

Thereafter, by letters dated September 25, 1952, and September 30, 1952, respectively, the parties entered into a "Refund Contract" wherein they agreed that if the State's Minimum Price Order should be finally adjudged invalid, defendant would thereupon promptly refund to plaintiff all overpayments made on account of such Price Order, i. e., all payments made in excess of the Contract Price.

For all gas sold and delivered by defendant to plaintiff between August 1, 1952, and December 22, 1957, payments were made by plaintiff, under protest, at the prices fixed by the State's Price Order.

On January 27, 1958, the Supreme Court of the United States held the Oklahoma Mimimum Price Order unconstitutional and void (Michigan-Wisconsin Pipeline Company v. Corporation Commission of Oklahoma, 355 U.S. 425, 78 S.Ct. 409, 2 L.Ed.2d 412); and on March 20, 1958, a mandate was issued vacating the Minimum Price Order.

The payments made by plaintiff to defendant on account of the Price Order, in excess of the price required under the Gas Purchase Contracts, aggregated $761,054.73. Demand for the refund of those overpayments, with interest, was made by plaintiff upon defendant; and defendant failed to comply with the demand.

By the second count of the Complaint, it is charged that, in addition to the transactions recited in the first count of the Complaint, defendant also sells and delivers natural gas to plaintiff at the wellhead, in the oil and gas fields described supra, under four other separate instruments, collectively called "Joint Operating Agreements", which cover certain specified oil and gas leases in Texas County, Oklahoma. In those contracts plaintiff is called "Gas Operator" and defendant, "Nonoperator". At all times material to this action and at present, these contracts were and are in full force and effect.

The price specified in each of those contracts is a definite amount for the first five years and, for the period thereafter, an amount equal to the "weighted average price" being paid in Texas County, Oklahoma, for gas sold to purchasers with pipelines comparable to the line from that County to Blackwell, Oklahoma.

For the gas referred to in the second count, the price paid by plaintiff and accepted by the defendant at all times prior to August 1, 1952, was the contract price. But, after the entry of the Oklahoma Minimum Price Order on July 29, 1952, plaintiff paid to defendant for all gas purchased under the Joint Operating Agreements between August 1, 1952, and December 22, 1957, a price equal to that fixed by the Price Order which was in excess of the Contract price. All such payments were made under protest by plaintiff and under Refund Contracts such as have been described supra, in connection with the first count.

The overpayments made by plaintiff to defendant for gas purchased under the Joint Operating Agreements during the period between the entry of the State's Order and the cessation of the overpayments following the mandate of the U. S. Supreme Court aggregated $16,798.52.

The question presented is whether or not this action is founded on a claim arising under the laws of the United States, in this case the Natural Gas Act, Title 15 U.S.C.A. § 717 et seq., and the regulations of the Federal Power Commission.

In Winsor v. United Air Lines, Inc., D.C., 159 F.Supp. 856, 859, this Court quoted with approval the following language of Judge Goodrich in Downing v. Howard, 3 Cir., 162 F.2d 654:

> "It is apparent that the question which we have to settle is whether the plaintiff has stated a basis for recovery under the federal statute just mentioned. If he has, the fact that he also asserts a non-federal ground does not lose him his privilege of suing in the federal court. On the other hand, if the substance of his claim is one based on state law, the reference to the federal statute is not enough to bring him into federal court, unless he has independent grounds for coming there. * * *"

The defendant argues that the claim here involved is founded upon the Natural Gas Act. My analysis of the facts indicates the contrary. Initially, it may be observed that nothing in the Natural Gas Act confers jurisdiction

upon this Court. It is my view that, reduced to its simplest aspects, this is a contract action based upon two counts, the first of which claims that $761,054.73 is due by virtue of the letters of September 25, 1952, and September 30, 1952, whereunder the defendant agreed that, should the Supreme Court of the United States invalidate the Minimum Price Order of the State of Oklahoma, above referred to, it would refund all payments in excess of the contract price; and the second of which, based upon similar letter agreements, seeks the recovery of $16,798.52, representing the amount paid under protest by the plaintiff to the defendant in excess of the contract price.

Now, it is conceded that in order to determine the exact amounts due, as well as other relevant questions, a construction of the Natural Gas Act and of the Commission Rules may have to be resorted to. But as said in the Winsor case, "Nor, * * * is the fact that a federal law may or will be drawn into construction during the course of the litigation sufficient to support jurisdiction in a federal court."

The defendant argues at some length that Montana-Dakota Utilities Co. v. Northwestern P. S. C., 341 U.S. 246, 71 S.Ct. 692, 95 L.Ed. 912, is authority for the proposition that jurisdiction exists in this Court. However, my examination of this decision leaves substantial doubt on this point and when doubt exists, jurisdiction should be denied. Winsor v. United Air Lines, Inc., supra.

Defendant, for the first time in its reply brief, suggests that neither this Court nor the Superior Court of Delaware, to which latter Court remand is sought, has jurisdiction of such a case as this. This point may be decided by the Superior Court upon remand for the reason that the conclusion here reached puts an end to the controversy insofar as concerns this Court.

An Order of remand will be entered.