CITIES SERVICE GAS COMPANY, a corporation, Plaintiff, v. COLUMBIAN FUEL CORPORATION, a corporation, Defendant.

CITIES SERVICE GAS COMPANY, a corporation, Plaintiff, v. THE TEXAS COMPANY, a corporation, Defendant.

*(November* 12, 1959.)

CHRISTIE, J., sitting.

*John J. Morris, Jr.,* and *Howard L. Williams* (of Morris, James, Hitchens and Williams) for Plaintiff; *Conrad C. Mount, O. R. Stites, Joe Rolston, Gordon J. Quilter* and *Robert R. McCracken* (all of Oklahoma City, Oklahoma), of counsel.

*James M. Tunnell, Jr.,* and *Andrew B. Kirkpatrick, Jr.* (of Morris, Nichols, Arsht and Tunnell) for Defendants; *Clark, Carr* and *Ellis* (of New York, New York), of counsel, for Columbian Fuel Corporation; *Paul F. Schlicher* and *Alfred C. DeCrane, Jr.,* (both of New York, New York), of counsel, for The Texas Company.

Superior Court for New Castle County, Nos. 670, 708 and 671, Civil Action, 1958.

CHRISTIE, J.:

Plaintiff Cities operates pipelines through which it distributes natural gas in interstate commerce for resale to its customers. Defendant Columbian produces natural gas.[1]

In 1949 and 1951 plaintiff and defendant entered into gas purchase contracts providing for the purchase by the plaintiff over a long period of natural gas produced by defendants in the Hugoton Field of Kansas. The contracts specified the prices to be paid for the gas.

On December 2, 1953, the Corporation Commission of the State of Kansas promulgated a minimum gas price-fixing order covering natural gas produced from the Hugoton Field. The effect of this order was to require plaintiff to pay a price higher than the price agreed upon for the gas in the contracts between plaintiff and defendant.

Plaintiff Cities did not agree to the increased rate, but paid it in order to comply with the order and thus avoid criminal penalties for violation thereof. A letter from Cities to Columbian, dated January 21, 1954, reads, in part, as follows:

"Pending final judicial determination of the said Order and beginning January 1, 1954, Cities Service Gas Company intends to pay for all gas purchased by it in the Kansas Hugoton Field in strict compliance with the terms and conditions of the said Order [the Kansas minimum price order dated December 2, 1953]. Such compliance with said Order by this Company, however, is made to avoid the penalties provided by the Kansas Statutes for a violation thereof, and the payments made to you in compliance with said Order pending its final judicial determination are to be considered and accepted by you as involuntary payments on our part, without prejudice to our rights in said

---

[1]The facts in Civil Action 670, 1958, against Columbian Fuel Corporation are set out because they are, in all material respects, illustrative of the facts in all three actions.

litigation, and in no event as an acquiescence by us in the validity of said Order.

"In the event the said Order is finally judicially modified or declared to be invalid in whole or in part, as a result of which you have been overpaid for gas purchased during the interim aforesaid, Cities Service Gas Company will expect you to refund to it the amount of said overpayments."

Thereafter, upon each voucher check sent from Cities to Columbian, there was the notation that payment was made subject to the provisions of the letter dated January 21, 1954.

On June 7, 1954, the United States Supreme Court held that the Federal Power Commission had authority under the Natural Gas Act to regulate sales by producers to interstate pipelines for resale. *Phillips Petroleum Co. v. State of Wisconsin*, 1954, 347 *U. S.* 672, 74 *S. Ct.* 794, 98 *L. Ed.* 1035.

The Natural Gas Act enacted by Congress on June 21, 1938, had conferred upon the Federal Power Commission general jurisdiction to regulate the sale in interstate commerce of natural gas for resale. 15 *U. S. C. A.* § 717b. After the Natural Gas Act was enacted and before the Phillips decision, the FPC had consistently disclaimed jurisdiction over sales by producers at the wellhead, in the belief that these sales were not sufficiently related to interstate commerce. A few days after the *Phillips* decision, on July 16, 1954, the FPC implemented the holding by promulgating FPC Order 174 (subsequently superseded by Order 174-A on August 6, 1954, and still later amended by Order 174-B, in respects not here material), requiring all independent producers such as Columbian to file as their rate schedules "the basic contract and all supplements and agreements amendatory thereof effective and applicable on and after June 7, 1954."

In November, 1954, Columbian filed with the FPC the basic gas contracts here involved and supplements thereto, together with billing statements. Thus, the original contract rates were filed, along with billing statements reflecting the increased rates

paid pursuant to Kansas minimum price order. On February 25, 1955, Columbian filed an addendum to its rate schedule specifically stating that the basis for charging the price shown on the billing statements was effectuation of the minimum prices established by the State of Kansas.

The FPC advised Columbian that this material had "been accepted for filing" but that such acceptance was not to be considered approval of the rate. Cities took no part in this filing process.

On January 20, 1958, the Supreme Court of the United States held that the minimum gas order of the Corporation Commission of Kansas was void on the ground that the order was in conflict with the Natural Gas Act which vests exclusive jurisdiction upon the FPC to regulate such sales of gas in interstate commerce. *Cities Service Gas Company v. State Corporation Commission*, 1958, 355 *U. S.* 391, 78 *S. Ct.* 381, 2 *L. Ed.* 2d 355.

After the Supreme Court held the Kansas order invalid, plaintiff resumed payments for gas purchased at the contract price instead of the price specified in the Kansas order.

Plaintiff made demand on defendants for repayment of the difference between the "contract price" and the amounts actually paid for the gas pursuant to the Kansas price order together with lawful interest thereon. Defendants refused to make any refund, and Cities brought this action to recover the alleged overpayments. The total amount sought is $888,357.58.

Defendants filed an answer raising a number of defenses and after much discovery filed a motion for summary judgment. The grounds originally stated as a basis for defendants' motion for summary judgment were as follows:

"1. During the period from January 1, 1954, to July 16, 1954, the *only* lawful price for the sales of natural gas by defendant to plaintiff, referred to in the complaint herein, was fixed by

a regulation of the State of Kansas, and plaintiff does not base its claim upon that regulation;

"2. During the period after July 16, 1954, the *only* lawful price for the sales of natural gas by defendant to plaintiff, referred to in the complaint herein, was fixed by a rate filed with and accepted by the Federal Power Commission, under its regulations prescribed under the Natural Gas Act, 15 *U. S. C. A.* § 717a *et seq.*, and plaintiff does not base its claim upon that filed rate; and,

"3. If the Kansas regulation, had not been in effect from January 1, 1954, to July 16, 1954, or if thereafter defendant had had no rate on file with the Federal Power Commission, the *only* lawful price for the sales of natural gas by defendant to plaintiff, referred to in the complaint herein, would have been that prescribed by the Natural Gas Act, 15 *U. S. C. A.* § 717a *et seq.*, and plaintiff does not base its claim upon that Act."

In the course of the briefing of the motion for summary judgment, both parties agreed that as to the period after July 16, 1954, at least no rate may be asserted as a legal right that is other than the filed rate.

Thus, it became apparent that a major issue in this case is the determination of what rate was the "filed rate" with the FPC during the period in question.

Defendants then asserted the position that this Court lacks jurisdiction to determine the "filed rate" and that it also lacks jurisdiction to determine the status of the rates prior to July 16, 1954, since under the *Phillips* decision these matters come within the provisions of the Natural Gas Act and as such must be heard in a Federal Court.

It is obvious that the jurisdiction of this Court should be determined before the merits of the defendants' motion for summary judgment are considered.

This opinion addresses itself first to the jurisdictional issue and then to the merits of defendants' motion for summary judgment.

## Jurisdiction.

Defendants' contention that this Court lacks jurisdiction to try and determine the dispute is based on Section 22 of the Natural Gas Act which provides, in pertinent part, as follows:

"Sec. 22. The District Courts of the United States, the District Court of the United States for the District of Columbia, and the United States courts of any Territory or other place subject to the jurisdiction of the United States shall have exclusive jurisdiction of violations of this act or the rules, regulations, and orders thereunder, and of all suits in equity and actions at law brought to enforce any liability or duty created by, or to enjoin any violation of this act or any rule, regulation, or order thereunder * * *" 15 *U. S. C. A.* § 717u.

Defendants maintain that after July 16, 1954, the only lawful price for the sales of natural gas by defendants to plaintiff was fixed by a rate filed with and accepted by the Federal Power Commission, that a determination of such rates by this Court would be a decision in actions at law brought to enforce a liability or duty created by the Act or a rule, regulation or order thereunder within the meaning of Section 22 of the Act.

Defendants also point to regulation § 154.21 of the Federal Power Commission which directs that no Natural Gas Company shall directly or indirectly demand, charge or collect any rate or charge * * * different from those prescribed in its effective tariff on file with the Commission.

Finally, the defendants maintain that since the whole controversy centers on what charges are required by the rates filed with the Commission under the Act, jurisdiction to determine such issue is plainly vested in the Federal Courts.

Plaintiff, on the other hand, maintains that this Court does have jurisdiction because these are common law actions in contract or for restitution, and the interpretation of the actions of the Federal Power Commission and a determination as to what constitutes the "filed rate" is not, as it is here brought before the Court, a matter over which the Federal Courts are given exclusive jurisdiction by the Natural Gas Act. Plaintiff thus maintains that the determination of a "filed rate" does not constitute the fixing of a rate.

I find defendants' contention that this Court lacks jurisdiction to be without merit. The actions here asserted are based on contracts and/or restitution and not on the Natural Gas Act. See *Cities Service Gas Company v. Skelly Oil Company*, D. C. Del. 1958, 165 *F. Supp.* 31; *Skelly Oil Co. v. Phillips Petroleum Co.*, 1950, 339 *U. S.* 667, 70 *S. Ct.* 876, 94 *L. Ed.* 1194; *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 1956, 350 *U. S.* 332, 76 *S. Ct.* 373, 100 *L. Ed.* 373.

The plaintiff may not recover if its right to recover depends on a rate schedule which is contrary to the Natural Gas Act or any rule, regulation or order thereunder. But that is not to say that the action is based on a liability or duty created by such Act. Plaintiff merely asserts a cause of action which may not be inconsistent with federal law or regulation. If recovery is not to be inconsistent with federal law and regulation, such law and regulation must be closely studied and carefully interpreted in this Court. Still the action of this Court in interpreting the filings which have taken place will not constitute the setting of a rate and a decision of this case on its merits will not involve a decision in an action at law brought to enforce any liability or duty created by the Natural Gas Act or any rule, regulation or order thereunder.

The Natural Gas Act has provided for federal price regulation but it has not set up any machinery for adjudication of contract disputes of the type before this Court. These cases are

not brought under the Act although an interpretation of what was done under the Act will be necessary to resolve the issues raised.

Since this Court has jurisdiction, it must pass upon the merits of defendants' motion for summary judgment. Such decision depends upon the status of the Kansas price order prior to July 16, 1954, and a determination of the rate filed with the FPC after that date.

### Validity of Kansas Order.

Defendants maintain that the Kansas minimum price order was valid until the FPC entered the field. Plaintiff argues that it is settled law that the Kansas minimum price order was void *ab initio*.

Decision on this point depends largely on an interpretation of the meaning of the United States Supreme Court decision in *Phillips Petroleum Co. v. State of Wisconsin, supra.* The problem is whether the Supreme Court there decided that federal jurisdiction was concurrent, and thus state regulation was valid until superseded by federal regulation on July 16, 1954, as defendants contend; or did it decide that federal jurisdiction was exclusive, and thus any state regulation was invalid *ab initio*, as plaintiff contends.

The first significant case in which the question arose was *Natural Gas Pipeline Co. of America v. Panoma Corp.*, 1955, 349 *U. S.* 44, 75 *S. Ct.* 576, 99 *L. Ed.* 866. Natural Gas Pipeline Co. agreed to purchase gas from the Panoma Corp. at a price specified in a contract between them. Soon after the contract was made, Oklahoma enacted its minimum price order fixing a price somewhat higher than that provided for in the contract. Suit was brought by Panoma to force the purchaser Pipeline Co. to comply with the Oklahoma order.

The Oklahoma Supreme Court held the Oklahoma price order valid and required the purchaser Pipeline Co. to pay the

difference between the contract price and the order price for previous years and to pay the order price in the future. The court specifically held that the state regulatory order did not violate the commerce clause of the *U. S. Constitution*, art. 1, § 8, cl. 3. *Natural Gas Pipeline Co. of America v. Panoma Corp., Okl.*, 271 *P.* 2d 354. This decision was rendered on September 15, 1953, and petitions for rehearing were denied on March 23, 1954, and on May 25, 1954. Thus, the case was decided after the passage of the Natural Gas Act, but during the period of federal disclaimer of jurisdiction over wellhead prices, and before there was any implementing federal regulation under the Act.

The *Panoma* case was appealed to the United States Supreme Court, where the Oklahoma Supreme Court decision was reversed. *Natural Gas Pipeline Co. of America v. Panoma Corp., supra*. The Court holds that under the *Phillips* decision, the FPC had exclusive jurisdiction over wellhead prices. Defendants point out that the U. S. Supreme Court decision was handed down on April 11, 1955, and that by then federal regulation under the Natural Gas Act had begun. Defendants argue that the initiation of federal regulation was an important factor in the reversal.

Defendants' argument is based on an incorrect premise. In deciding a case, a court views facts and surrounding circumstances as they were at the time of the occurrence under litigation, not as of the time the case is finally decided. Applying this principle, the *Panoma* case dealt in part at least with the status of federal regulation as of 1953.

As before mentioned, in 1953 the Natural Gas Act lay unimplemented on the books, there being a federal disclaimer of jurisdiction over wellhead prices. This was the situation to which the U. S. Supreme Court looked when in *Panoma, supra*, it held the Oklahoma Order invalid. It thus appears that if the state regulation was invalid even in the absence of federal regulation, there never was a time when it could be valid, *i.e.*, it was void

*ab initio.* So viewed, the *Panoma* case controls the present one on this point.

The Supreme Court in *Panoma* noted a dissent by Mr. Justice Douglas in the following language:

"Mr. Justice Douglas, being of the opinion that State regulation is permissible until the Federal price regulation permitted by *Phillips. Petroleum Co. v. State of Wisconsin,* 347 *U. S.* 672, 74 *S. Ct.* 794, 98 *L. Ed.* 1035, is imposed, dissents."

It thus appears that the question whether state minimum gas price orders could stand until federal regulation was imposed was considered by the Supreme Court in conference and the views of Mr. Justice Douglas were rejected.

Later, when the United States Supreme Court held the Kansas minimum price order invalid in *Cities Service Gas Company v. State Corporation Commission,* 355 *U. S.* 391, 78 *S. Ct.* 381, 2 *L. Ed.* 2d 355 (Jan. 20, 1958), the Court in an opinion by the whole Court, simply stated:

"*Per curiam.* The judgment is reversed. *Phillips Petroleum Co. v. State of Wisconsin,* 347 *U. S.* 672, 74 *S. Ct.* 794, 98 *L. Ed.* 1035; *Natural Gas Pipeline Co. v. Panoma Corp.,* 349 *U. S.* 44, 75 *S. Ct.* 576, 99 *L. Ed.* 866."

The absence of a dissent by Mr. Justice Douglas on this occasion seems to indicate either that his views were still unacceptable to the majority of the court and he did not see fit to urge them further, or that he had acquiesced in the majority view. In any event, the Supreme Court followed its reasoning in the *Panoma* case and held the Kansas regulation invalid from its inception.

The above analysis of the decisions of the United States Supreme Court appears to have been accepted in part at least in the Fifth Circuit in *Natural Gas Pipeline Co. of America v. Harrington,* 246 *F.* 2d 915, *certiorari* denied 1958, 356 *U. S.* 957, 78 *S. Ct.* 992, 2 *L. Ed.* 2d 1065; by the Third Circuit in *Natural Gas Pipeline Co. of America v. Federal Power Commission,* 253

*F.* 2d 3, *certiorari* denied *Dorchester Corp. v. Natural Gas Pipeline Co.*, 1959, 357 *U. S.* 927, 78 *S. Ct.* 1372, 2 *L. Ed.* 2d 1370, and by the Tenth Circuit in *Cities Service Gas Co. v. Federal Power Commission*, 255 *F.* 2d 860, *certiorari* denied *Magnolia Petroleum Co. v. Cities Service Gas Co.*, 1958, 358 *U. S.* 837, 79 *S. Ct.* 61, 3 *L. Ed.* 2d 73.

In the Fifth Circuit case, a second petition for rehearing was filed by Harrington contending that the Oklahoma Order was valid to July 16, 1954. This contention was rejected by the Court in its 253 *F.* 2d 231 *per curiam* order dated March 5, 1958, wherein the Court said:

"*Per curiam.* Leave to file a second petition for rehearing is denied. *Natural Gas Pipeline Co. of America v. Panoma*, 349 *U. S.* 44, 75 *S. Ct.* 576, 99 *L. Ed.* 866. The notation of Mr. Justice Douglas' dissent shows that the Court considered the question presented by this second petition for rehearing."

Finally, the Supreme Courts of Oklahoma and of Kansas have decided against the proposition advanced by the defendants here. The Oklahoma Supreme Court issued an order to the Oklahoma Corporation Commission on March 20, 1958, which read, in pertinent part, as follows:

"That Order No. 26096 of the corporation commission of the State of Oklahoma which is the subject of appeals to this Court and the Supreme Court of the United States be, and the same is, hereby reversed, set aside and held for naught in its entirety."

The Kansas Supreme Court, in *Cities Service Gas Co. v. State Corporation Commission*, 184 *Kan.* 540, 337 *P.* 2d 640, *certiorari* denied, 1959, 80 *S. Ct.* 89, held that the Kansas minimum price order,

"invaded the jurisdiction of the Federal Power Commission and was not within the jurisdiction of the State Corporation Com-

mission to enter even though the Federal Power Commission had not exercised jurisdiction in the matter."

This Court has read with care the provocative dissenting opinion of Fatzer, J., in the Kansas case. However, I regard the opinion of the majority as better reasoned and it is now the well established view.

■ In my opinion, the Kansas minimum price order was void *ab initio* and never legally imposed any obligation on Cities to pay a price for gas different from that expressed in the gas purchase contracts.

As to the period before July 16, 1954, the state's price regulations were void. Since there were no "filed" rates with the FPC, there was no effective governmental price regulation in this field and as between the parties, the rates specified in their contracts would govern. The argument that the only legal rate was the "filed" rate cannot find application as to the period when there was no filed rate and no one knew that rates should be filed.

As to the period prior to July 16, 1954, defendants' motion for summary judgment is without merit.

### The Legal Rate After July 16, 1954

Both parties agree that as to the period after July 16, 1954, the only legal rate is the filed rate "and not even a court can authorize commerce in a commodity on other terms." *Montana-Dakota Utilities Co. v. Northwestern Public Service Co.*, 1951, 341 *U. S.* 246, 251, 71 *S. Ct.* 692, 695, 95 *L. Ed.* 912. The question then becomes what rate was legally filed? Plaintiff claims that the rate filed was the contract rate, while defendant Columbian claims that the rate filed was the rate prescribed by the Kansas minimum price order.

The question is not accurately put when we ask what was the "filed rate" since obviously the rates advocated by each

party were on file with the FPC. The question really is which of the rates filed with the FPC is the legal rate binding upon the parties before this Court.

Defendants' position is that their action in tendering rate schedules to the FPC and the action of the FPC in accepting these schedules for filing made the rate prescribed by the Kansas minimum price order the legally filed rate.

The letters of acceptance written by the FPC to Columbian at the time the rates were filed tend to indicate that the FPC was of the opinion that neither the unilateral act of filing by the seller (such as defendant) nor that of the Commission in accepting the rate for filing was sufficient to increase a rate over that in the original contract. Such letters contain the following qualifying provision:

"This acceptance for filing shall not be construed as a waiver of the requirements of Section 7 of the Natural Gas Act, as amended; nor shall it be construed as constituting approval of any rate, charge, classification, or any rule, regulation or practice affecting such rate or service contained in the rate filing; nor shall such acceptance be deemed as recognition of any claimed contractual right or obligation associated therewith; and such acceptance is without prejudice to any findings or orders which have been made or may hereafter be made by the commission in any proceedings now pending or hereafter instituted by or against your company."

That a change in rate cannot be brought about by unilateral action was clearly established by the Supreme Court in *United Gas Pipe Line Co. v. Mobile Gas Service Corp.*, 1956, 350 *U. S.* 332, 76 *S. Ct.* 373, 100 *L. Ed.* 373. The Supreme Court there explained that the original contract rate is not changed by unilat-

Defendants' contention that the filing of the rates paid under protest on account of the Kansas order made such rates the legal rate under the Natural Gas Act is without merit.

eral action unless and until it is changed in a proceeding under Section 4(a) and (c) or Section 5(a) of the Act, requiring notice to the parties and an opportunity to be heard.

Since the Kansas minimum price order was void, the filing of rates involuntarily paid thereunder was no more effective than was the filing in the above cited case. See also *Cities Service Gas Co. v. Federal Power Commission, supra.*

Defendants' next attempt to establish that the rates required by the Kansas order were the contract rates because under a clause in the original gas purchase contract, the contract price can be changed at any time by an order such as that issued by the Kansas Commission. The clause reads:

"This Agreement is subject to all present and future laws and valid orders, rules and regulations of any regulatory body having jurisdiction."

According to defendants, the Kansas order was in effect until federal regulation began on July 16, 1954, and determined prices up to that time.

The clause clearly states that the agreement is subject to any subsequent "*valid* order". This Court has already determined that the Kansas order was void *ab initio* and thus the clause can have no application here.

Since the Kansas order is a nullity and the filing of rates required thereunder did not change the rate set up in the original contract or establish a new legal rate, what then is the rate on file with the FPC, and thus the legal rate for the period prior to July 16, 1954?

The Federal Power Commission's position on this matter, as stated in its brief to the Circuit Court in *Cities Service Gas Co. v. Federal Power Commission,* 10 *Cir.,* 255 *F.* 2d 860, *certiorari* denied *Magnolia Petroleum Co. v. Cities Service Gas Co.,* 1958, 358 *U. S.* 837, 79 *S. Ct.* 61, 3 *L. Ed.* 2d 73, was that:

"Since the Kansas order has been declared invalid on the date of filing, it was never a part of the filed rate, and Cities Service is not barred by the filed 11¢ rate from recovering any payments made by it in excess of the contract price."

and further that the:

"rate as we have seen is the 6¢ contract rate in view of the invalidity of the Kansas order, not the 11¢ rate reflected in the billing statements."

The Circuit Court accepted the FPC position and in the *Cities Service* case, *supra* [255 F. 2d 865], held:

"When the United States Supreme Court struck down the Kansas order, there was no longer a valid order which could modify the contract rate, and the contract rate was the rate effective * * *"

To the same effect is the decision of the Fifth Circuit in *Natural Gas Pipeline Co. of America v. Harrington, supra,* and of the Third Circuit in *Natural Gas Pipeline Co. of America v. Federal Power Commission, supra.*

The Court holds, as a matter of law, that implicit in the acceptance by the Commission of the Kansas minimum price order was the validity of that order. If said order were valid, the rate prescribed therein would indeed constitute the filed rate of defendants with the Federal Power Commission. However, since the Kansas order was void, the only lawful filed rate is the contract rate, unaffected by the Kansas order.

Defendants' motion for summary judgment is denied.