WESTERN NATURAL GAS COMPANY, Appellant, v. CITIES SERVICE GAS COMPANY, Appellee.

438

(*May* 21, 1964.)

TERRY, Chief Justice, and WOLCOTT and CAREY, J. J., sitting.

*Clair J. Killoran* and *Courtney H. Cummings, Jr.* (of Killoran and Van Brunt) and *Hogan & Hartson* (of Washington, D.C.), and *John C. Dawson* (of Liddell, Austin, Dawson and Sapp of Houston, Texas), and *J. Colin Lizotte* (of Enright and Lizotte, of Milford, New Hampshire) for appellant.

*Howard L. Williams* and *Henry N. Herndon, Jr.* (of Morris. James, Hitchens and Williams) and *C. C. Mount* and *Charles V. Wheeler* (of Oklahoma City) for appellee.

Supreme Court of the State of Delaware, No. 58, 1962.

CAREY, Justice (for a majority of the court):

The defendant below has appealed from an order of the Superior Court granting summary judgment to the appellee. Cities Service Gas Company (Cities) operates

an interstate pipe line company and Western Natural Gas Company (Western) is a producer of natural gas. The action was brought to recover alleged overpayments for natural gas purchased by Cities from Western from January 1, 1954 to January 1958. The matter is now before this Court on motions of both parties for reargument. This Court previously filed majority and dissenting opinions, but the petitions for reargument were granted. Following this, the former Chief Justice left the bench and the reargument therefore covered all phases of the case. Because we have concluded to withdraw the prior opinions, it is necessary to discuss the matter in full.

Two earlier cases involving these overpayment actions have been passed upon by this Court. See *Columbian Fuel Corporation and Pan-American Petroleum Corporation v. Superior Court*, 2 Storey 365, 52 Del. 365, 158 A.2d 478; aff'd. 366 U.S. 656, 81 S.Ct. 1303, 6 L.Ed.2d 584; *Helmerich & Payne v. Colorado Interstate Gas Company*, Del., 187 A.2d 67.

The background of this case and many of the pertinent facts giving rise to the action are to a great extent the same as in the first cited case, which involved a similar suit for overpayments brought by Cities in the Superior Court. For a discussion of the Kansas minimum price order effective January 1, 1954, Cities' letters of protest to its suppliers of gas and payments for gas at the rate fixed by the order, Cities attack on the Kansas order, and the final voiding of the order on January 20, 1958 by the Supreme Court of the United States, see the opinion in the Columbian case, supra. Cities' protest letter to Western appears to be identical with that sent to Columbian and Pan-American. We see no reason to repeat these matters in this opinion.

In this case, as in the former cases, the producer,

after the Federal Power Commission had assumed jurisdiction in June 1954, filed a copy of the contract and the Kansas price order with the Commission to establish the rate for gas between the parties. A copy of the protest letter was not filed.

The present case raises issues not directly involved in the Columbian case, which presented primarily the question of the jurisdiction of a state court to entertain the suits for refunds. That jurisdiction was upheld, but the merits, i.e., the right to recover, were not involved. See 366 U.S. 656, 81 S.Ct. 1303.

In granting summary judgment to Cities the trial Judge held:

1. The pleadings state a good cause of action for restitution, and the undisputed facts support the pleadings.

2. Plaintiff has no administrative remedy.

3. Plaintiff is entitled to interest from the date the Kansas order was declared invalid.

4. The statute of limitations does not bar the action.

All of these holdings are challenged by Western.

The contract between the parties set a price of 8c per M.C.F., but it contained the following clause:

"This agreement is subject to all present and future laws and valid orders, rules and regulations of any regulatory body having jurisdiction."

■ ■ The contract price could, therefore, be changed by mutual agreement, or by promulgation of a valid regulation by a governmental authority having jurisdiction to do so. Had the Kansas regulation been valid,

the result would have been an automatic increase in the contract rate to 11c. Being invalid and void ab initio, the regulation itself in fact made no change in that contract price. Prior to June 1954, when the Federal Power Commission first asserted jurisdiction, there is no basis for saying that Cities was contractually bound to pay 11c.

Western contends, however, that the legally effective rate became 11c commencing in June 1954 when the Federal Power Commission first asserted jurisdiction, wherefore Western argues that a state court has no power to change it retroactively by ordering repayments.

This argument was dealt with in the Columbian case, supra, wherein this Court cited several Federal decisions. To them may be added *Pan-American Petroleum Corporation v. Kansas-Nebraska Natural Gas Company, Inc.*, 8 Cir., 297 F.2d 561. It was held that the Natural Gas Act is not inconsistent with reimbursement for overpayments, because the Kansas order was void ab initio and the contract rate controlled.

Western makes another contention which concerns not only the matter of the effective rate, but also the power of a state court to decide the matter. This argument is based on two proceedings before the Federal Power Commission.

The first proceeding was originated by a complaint filed on August 31, 1955 by Tennessee Public Service Commission and others with respect to rates charged by Western. Thereupon, the Commission instituted an investigation into all the rates charged or collected by Western. It held a number of hearings. Cities did not seek to intervene. On December 31, 1959, the presiding examiner made a finding that Western's rates had not been shown to be unjust. He also stated that dismissal

of the complaint would have the effect of determinating that the existing rates would be continued. As the 11c rate was one of those under consideration, Western now contends that the Commission in fact adjudicated the rate. The answer to this suggestion is that the Commission itself modified the Examiner's findings. Its final order expressly held that it was making no determination as to whether Western's individual rates were just and reasonable, that its dismissal of the complaint was not a determination that the existing rates should be continued, that it did not adopt the examiner's finding to the effect that none of those rates had been shown to be unjust or unreasonable. Moreover, it expressly directed that its order was not to be construed as a determination of what the effective legal rates are or have been for jurisdictional sales by Western.

In another proceeding before the Commission, Western complained against Cities for failure to pay the 11c rate, Cities having ceased to pay it after the Kansas regulation was declared void. Later Western requested that this proceeding be consolidated with another matter pending before the Commission. The Commission denied the application to consolidate, holding inter alia, as follows:

"Since litigation is now pending between the parties concerning the lawful rate for the sale and purchase of gas, it is neither necessary, appropriate, nor in the public interest for the Commission at this time to undertake to determine the rates for those sales * * *"

This language appears to amount to a disclaimer of jurisdiction over the dispute now before us.

In a separate proceeding, the Commission had before it a proposal to amend its rules so as to provide for the rejection of any tender for filing to the extent that the

filing was based on a State-prescribed minimum price. This proceeding was initiated on April 28, 1958 and early in 1962 the Commission decided to terminate that proceeding, stating that "at this late date a rule making proceeding would be a cumbersome and inappropriate means by which to exercise our jurisdiction over the matters involved here * * *. We recognize, moreover, that a buyer of natural gas who has paid seller on the basis of a State minimum price law can invoke the jurisdiction of an appropriate Court in the event that his contract provides for a refund if the State minimum price laws are held invalid".

The foregoing language seems to emphasize that the Commission has disclaimed jurisdiction over the subject matter of refund litigation growing out of rate filings based on State minimum price orders, or, at least has recognized the existence of such jurisdiction in State Courts.

We are accordingly of the opinion that nothing done by the Commission has altered the contract rate or fixed a minimum price of 11c for the period within which we are concerned. We also continue to be of the opinion that our Superior Court has jurisdiction to determine this matter.

The net result is that neither the invalid Kansas regulation nor any action of the Federal Power Commission made any change in the price of 8c which was accordingly the *effective* rate throughout the pertinent period. It follows that, had Cities paid only 8c, Western would have no valid ground to sue for the excess. Of course, Cities did pay 11c up to the time of the Supreme Court decision, and the question is whether it may now recover the excess.

The complaint, as amended, contains three theories:

(1) Cities' protest letter of January 21st 1954, followed by the notations on the monthly checks specifically referring to that letter and the acceptance of those checks by Western, constituted an agreement on the part of Western to refund the excess if and when the regulation was declared invalid; (2) the excess was paid by Cities because of business compulsion or duress and Cities is therefore entitled to restitution; (3) the excess was paid involuntarily and Western was unjustly enriched thereby, wherefore Cities is entitled to restitution. The Court below held that a case for restitution was shown by the uncontradicted evidence in the record, and it declined to rule on the "contract" theory. Because that contention was not decided by the trial court and was not raised before us until the petition for reargument, we prefer not to decide it at this stage. The question we must pass upon is whether the undisputed evidence—consisting of affidavits, answers to request for admissions and certain allegations in the complaint admitted by the answer— justifies entry of summary judgment for Cities.

The ruling of the Court below is challenged by Western on several grounds: (1) the record does not justify a finding of business compulsion and there should at least be a trial before its existence can be determined; (2) payment of the excess was a voluntary one which cannot be recovered, or, at least, it cannot be held involuntary without further proof; (3) the excess was paid by mistake of law for which no recovery may be had; (4) there has been no unjust enrichment because Cities was reimbursed by an increase in the rates paid by its customers and has therefore lost nothing; (5) the action is barred by the statute of limitations.

Although in the arguments before us much stress has been laid upon the theory of business compulsion or

duress, that theory of recovery is not even mentioned in any of the opinions of the lower Court. At one point, in discussing the propriety of summary judgment, that Court refers to its prior holding in *Cities Service Gas Co. v. Columbian Fuel Corp.*, 2 Storey 262, 52 Del. 262, 155 A.2d 879, as being dispositive of many of the arguments made in this case. As we read the Columbian opinion, aside from the matter of jurisdiction, it deals primarily with a determination of the true "filed" or effective rate, counsel having conceded that Columbian could not retain any money paid in excess thereof. No determination was made as to the existence of duress. In the present case, we have no such concession.

At another point in the opinion below, however, in dealing with the statute of limitations, the Court cites and relies upon decisions which allowed recovery of money paid under a judgment or decree which is subsequently reversed. See Restatement, Restitution, Sec. 74. It points out the analogy between payments made by reason of such a reversed judgment and those made under a statute or substantive administrative regulation held to be void.

We are, accordingly, not certain as to just what was the true basis of the Court's finding, although clearly it was not predicated upon a contract to repay.

Of course, payment voluntarily made with full knowledge of the facts cannot be recovered, in the absence of a contract to repay. 40 Am.Jur. 822. A payment under protest is not necessarily involuntary, nor is it made so by unilaterally calling it involuntary at the time of payment; *Natural Gas Pipeline Co. of America v. Harrington*, 5 Cir., 246 F.2d 915; *Monaghan v. Lewis*, 5 Pennewill 218, 225, 59 A. 948; 40 Am.Jur. 820; but where money is paid because of duress, the payment is involuntary. The question is basically one of fact, al-

though undisputed facts may justify summary judgment.

█ The plaintiff here maintains that the undisputed facts in the record require the finding of involuntariness by reason of duress. It contends that it was forced to pay the higher charge by the Kansas statute which carried criminal sanctions. There are cases holding that payments required to be made by an administrative order are similar in effect to those made pursuant to a judgment, the order constituting sufficient compulsion to render the payment involuntary. Restitution has been ordered in such cases when the administrative order was declared invalid. 2 Am.Jur.2d 676. In every instance we have seen of this type, however, the order was clearly applicable to both payor and payee. Here, the Kansas Supreme Court held, in *Cities Service Gas Co. v. State Corporation Commission,* 180 Kan. 454, 304 P.2d 528, that the order (therefore, presumably, the criminal sanctions) applied only to the seller. It is not suggested that Cities was motivated by the desire to protect Western against those sanctions. In other words, the order did not require Cities to pay, although it required Western to collect. Cities was mistaken if it believed that the statute was applicable to it, and this mistake was one of law for which restitution does not lie. The distinction we are now making is not a mere play upon words. The point is that the order did not force Cities to do anything.

█ █ It seems to us that plaintiff is thus obliged to fall back upon the theory of business duress, if there was no contract to refund. We do not have before us a finding of fact made after a hearing of testimony or upon a stipulation of facts; what we do have is a summary judgment, which may be entered only when there is no dispute of material fact and only one inference is justified. As applied here, to determine the propriety of the judg-

ment below, we must decide whether the only reasonable conclusion is that Cities was compelled by duress to make the higher payments in order to meet its needs for gas.

 In order to recover under the doctrine of business duress, Cities must, of course, demonstrate the actual existence of duress, as well as the likelihood that serious harm would occur to its business if it did not pay the increase. 17 Am.Jur. § 7. In charging duress in this case, Cities relies heavily upon the Harrington case, supra. There, perhaps, an actual threat was made by the supplier to discontinue deliveries if the new rate was not paid; at least, the Court found that the buyer was justified in considering certain statements to be such a threat. See D.C., 139 F.Supp. 452. The present record contains nothing to show that Western made any threat or did anything else to force Cities to pay the higher price. In fact, § 7(b) of the Natural Gas Act prohibits a supplier from discontinuing service without permission of the Federal Power Commission. In short, the record does not establish what action Western would have taken had Cities refused to pay the higher price. We have already discussed the claim of duress arising from the Kansas regulation, and no other event or action constituting duress has been suggested.

In the second place, the record is insufficient to establish definitely a compelling necessity for Cities to continue purchasing from Western.

At the present stage, we cannot determine what additional evidence is required; we simply hold that the present record does not necessarily lead exclusively to the inference of involuntary payment by Cities. The record fails to establish duress; it also fails to establish that Cities was in imminent danger of suffering immediate and substantial economic injury as a result of any duress.

Two other defenses raised by Western will be mentioned. It points out that Cities received higher rates from its customers and concludes that it has sustained no loss. The real losers are Cities' customers and at least as to the "jurisdictional" customers, Cities is required by an order of the Federal Power Commission to refund to them any amounts recovered here. To this extent, certainly, we think that this argument constitutes no defense. The statute of limitations would not bar a recovery if business duress is proven or it is ultimately determined that there was a contract to refund. *Cf. Helmerich & Payne v. Colorado Interstate Gas Company,* supra.

We do not foreclose Cities from reasserting its "contract" argument in the Court below. Because we cannot predict the ultimate conclusion of the trial Court as to either theory, we think it inadvisable at this time to determine the other questions raised, such as the amount of recovery, if any, and the matter of interest.

The prior opinions are withdrawn, and the decision of the Court below is reversed with directions to proceed in accordance herewith.

WOLCOTT, Justice (dissenting).

I dissent from the conclusion reached by the majority that this case must be remanded for further proceedings. I would affirm the judgment below because, in my opinion, the record contains sufficient to demonstrate that Cities paid Western the 11c rate for gas under business compulsion, which therefore makes the payment of the excess involuntary on the part of Cities. The majority takes the view that the record is incomplete in this respect. I disagree.

When the Kansas order fixing the price at 11c was first promulgated it applied on its face to all who "take

gas or cause gas to be taken" from the Hugoton Field. It seems plain, therefore, that until December 8, 1956, when the Supreme Court of Kansas in an attempt to save the order "construed" it to apply only to producers, 180 Kan. 454, 304 P.2d 528, Cities was justified in thinking the order applicable to it and that a violation by it would have subjected it to criminal sanctions. Thus, it seems proper to me to conclude that from January 1, 1954 to December 8, 1956, at least, Cities was paying the additional 3c under the compulsion of fear of the criminal sanctions of the order, in part at least.

But of more importance in this respect is the fact that Western admittedly would have been subjected to the criminal sanctions of the order if it had sold gas to Cities at less than the 11c rate. Cities had to have the gas to supply its customers. It could obtain that gas from the Hugoton Field only by purchasing at 11c from Western to which it was bound by contract. Under the circumstances, Cities took the only reasonable course—it paid under protest and took steps to invalidate the order.

The majority says that the record is silent as to whether or not Western would have refused delivery to Cities if tendered the 8c contract price. If such was the fact, that is, if Western would have delivered for 8c and thus have deliberately flouted the Kansas order, admittedly applicable to it, that fact should have been made to appear affirmatively in the record by Western. It does not appear, and it does not seem reasonable to assume that Western would have had such little regard for the laws of Kansas within whose boundaries it was producing natural gas.

The majority says that Cities has made no showing that it could not have acquired the necessary gas from

other sources, or from its own reserves. Why should it be required to make such a showing? It had a contract with Western to supply its needs. To this contract both were bound.

I think this case is similar to *Natural Gas Pipeline Co. of America v. Harrington*, 246 F.2d 915, which should lead this Court to affirm the judgment below.