# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| Barbara L. Kauffman and<br>Kauffman Investments LP, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | C.A. No. S23C-09-015 MHC |
| | ) | |
| Ocean View Produce, Inc., | ) | |
| | ) | |
| Defendant. | ) | |

Submitted:  September 30, 2024
Decided:  December 19, 2024

*Plaintiff's Motion for Summary Judgment –* **GRANTED.**

## MEMORANDUM OPINION AND ORDER

Paul Enterline, Esquire, 113 South Race Street, Georgetown, DE  19947, *Attorney for Plaintiff*

Robert Pasquale, Esquire, Doroshow, Pasquale, Krawitz & Bhaya, 1202 Kirkwood Highway, Wilmington, DE  19805, *Attorney for Defendant*

**Conner, J.**

1

# PROCEDURAL POSTURE

Before the Court is a Motion for Summary Judgment brought by Plaintiffs Barbara L. Kauffman and Kauffman Investments LP to dismiss the remaining counterclaims of Defendant Ocean View Produce, Inc.  This suit originated as a dispute over the ownership of a produce stand and its improvements.  The original dispute has resolved by Plaintiffs purchasing Defendant's interest, which moots Plaintiffs' original complaint and Defendant's related Counterclaim I.  Defendant still has two remaining counterclaims:  Counterclaim II is for reimbursement, challenging the validity of rent increases from 2006–2023 (the "Rent-Increasing Leases") based on a written lease from 2002 (the "Original Lease"); Counterclaim III is for damages related to the Rent-Increasing Leases on the basis of fraud, undue influence, duress, contract of adhesion, unconscionability, and violation of the covenant of good faith and fair dealings.

Plaintiffs now move for summary judgment on the remaining counterclaims based on (1) the doctrines of voluntary payment, laches, acquiescence, and/or related doctrines; (2) the statute of limitations; and (3) the argument that Defendant's claims rely upon an improper construction of the Original Lease which would violate the Rule Against Perpetuities.

**FACTS**

This case involves a property owned by Plaintiff Barbara Kauffman's husband, Charles Kauffman, until she inherited it after his death in 2005.[1] Charles Kauffman was good friends with the prior owner of Defendant Ocean View Produce, Inc., who operated a produce stand on the property. Thus, the two agreed to an informal oral commercial lease of $1,000 per year.[2] In 2002, Charles and the prior owner of Defendant Ocean View Produce, Inc. formalized the commercial lease with a document, hereinafter referred to as the "Original Lease," signed by Charles, Plaintiff Barbara Kauffman, and Defendant Ocean View Produce, Inc.'s prior owner next to the word "SEAL."[3] Pursuant to Charles's dying wish, Defendant's rent was waived for the year 2005.[4] Starting in 2006, Plaintiff Barbara Kauffman increased the rent to $7,000, and subsequently raised the rate a few times up to $11,000 by 2015 (the "Rent-Increasing Leases").[5]

---

[1] App. to Kauffman's Br. in Supp. of Mot. to for Summ. J. (hereinafter "Opening Br. App.") at A95.

[2] Opening Br. at 3.

[3] Def.'s Br. in Opp'n to Pl.'s Mot. for Summ. J. (hereinafter "Answering Br.") at 1; Opening Br. App. at A20–22. The prior owner of Defendant Ocean View Produce, Inc. is the father of its current owner; both the prior and current owners are named James Robinson. To avoid confusion, these two are referred to as the prior and current owner.

[4] Opening Br. at 3.

[5] Answering Br. at 2; *see generally* Opening Br. App. at A24–38 (documenting payments from 2009–2013 and 2015–2023). The record is missing the payment history for 2014, so it is unclear whether the final rent increase was in 2014 or 2015. *See* Opening Br. App. at A24. The exact year of the final rent increase does not impact this Court's analysis.

In 2023, Plaintiff Barbara Kauffman sold the property to an unrelated third party, but Defendant argued that it was entitled to ownership of improvements to the produce stand pursuant to the Original Lease. Plaintiffs sued for declaratory judgment that the Original Lease did not entitle Defendant to any ownership rights, and Defendant's First Counterclaim sought similar declaratory judgment in its favor. These claims were resolved when Plaintiffs purchased Defendant's ownership claims to the improvements for $35,000.[6]

The remaining claims at issue, Defendant's Second and Third Counterclaims, both stem from the assertion that the Original Lease guaranteed that Defendant was entitled to renew the annual lease at a rate of $1,000 per year and that the Rent-Increasing Leases were invalid as a matter of law.[7]

Counterclaim Count II is for reimbursement for the difference between what Defendant actually paid in accordance with the Rent-Increasing Leases and what it allegedly should have paid according to the Original Lease.[8] Defendant claimed it is entitled to reimbursement on the grounds that the Rent-Increasing Leases constituted breaches of the Original Lease, that the Rent-Increasing Leases were not

---

[6] Opening Br. at 2.
[7] *See generally* Answer to Compl. and Amended Countercls. at ¶ 30–the second ¶ 38 [sic].
[8] *See id.* at ¶ 30–32.

valid because they were not negotiated, that no consideration was given for the Rent-Increasing Leases and thus they are invalid modifications of the Original Lease.[9]

Counterclaim Count III seeks damages related to the Rent-Increasing Leases, on the grounds that the Rent-Increasing Leases were contracts of adhesion, were procured through fraud, duress, and/or undue influence and were unconscionable, and further alleges that Plaintiff violated the implied covenants of good faith and fair dealing.[10]

At this point in the litigation, both parties agree that no substantive negotiations took place, the Rent-Increasing Leases were not formalized in writing unlike the Original Lease and Defendant paid the rent at the increased rates.[11] The current owner of Defendant Ocean View Produce, Inc. admitted that when Plaintiff Barbara Kauffman requested the first rent increase in 2006, he was fully aware of the Original Lease, its terms, and that he was paying more rent than he should have before he tendered the first check.[12] The current owner of Defendant Ocean View Produce, Inc. further admitted that he immediately accepted the request to increase rent and did not ask why the rent was going up, negotiated, or even mention the terms of the Original Lease, wanting to "keep the peace" and avoid Plaintiff Barbara

---

[9] *See id.* at ¶ 30–32.
[10] *See id.* at ¶ 34–the second ¶ 38 [sic].
[11] *Compare* Opening Br. at 4–5 *with* Answering Br. at 2–3.
[12] Answering Br. Ex. D at 53–54, 67–71.

Kauffman seeking a different tenant.[13]   Facts still disputed are Plaintiff Barbara

Kauffman's inconsistent justifications for raising the rent as they potentially relate

to Defendant's claims for fraud, undue influence, duress, and the violation of the

covenants of good faith and fair dealings.[14]

## STANDARD OF REVIEW

Under Superior Court Civil Rule 56, the burden of proof on a motion for

summary judgment falls on the moving party to establish that ". . . there is no genuine

issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."[15]  If this initial burden is satisfied, then the burden shifts to the non-

moving party to establish the existence of one or more genuine issues of material

fact.[16]   All facts and reasonable inferences must be considered in a light most

favorable to the non-moving party.[17]

---

[13] *Id.* at 67–72.
[14] *See* Answering Br. at 2–4 (outlining the inconsistent justifications). Defendant also raised issue with whether its current owner verbally asked Plaintiff Barbara Kauffman for an opportunity to purchase the property, the relevance of which is unclear as Defendant does not formally claim any legal right of first refusal.
[15] Super. Ct. Civ. R. 56(c); *see e.g.*, *Quality Elec. Co., Inc. v. E. States Constr. Serv., Inc.*, 663 A.2d 488 (Table) (Del. 1995).
[16] Super. Ct. Civ. R. 56(e); *see e.g.*, *Heasley v. Allstate Prop. and Cas. Ins. Co.*, 2022 WL 951259 (Del. Super. Mar. 28, 2022).
[17] *Heasley v. Allstate Prop. and Cas. Ins. Co.*, 2022 WL 951259 at *2 (Del. Super. Mar. 28, 2022) (citing *Nutt v. A.C. & S. Co., Inc.*, 517 A.2d 690, 692 (Del. Super. 1986)).

## ANALYSIS

Plaintiff raises the issue of voluntary payment as waiver of Defendant's remaining counterclaims. Delaware courts have previously established:

> The voluntary payment doctrine bars recovery of "payment voluntarily made with full knowledge of the facts ..." It prevents a counterparty from claiming that a "misapprehension of ... [its] legal rights and obligations" caused it to make payments by mistake. Conceptually, the voluntary payment doctrine derives from the intellection that ignorance of the law is no excuse. A contract party who pays its counterparty even though it had no contractual (legal) duty to do so may be found to have waived an argument in favor of recovering those payments. But the voluntary payment doctrine's negative treatment of mistakes of law does not reach all mistakes. When "money [is] paid under a mistake of fact," even if the mistake is unilateral, the errant payment may be excused and recovery possible. In deciding whether the mistake is one of law or fact, courts look to the totality of the circumstances, considering "the circumstances under which [the payment] was made, the conduct of the payee and payor, and any other factors bearing on whether it would be unjust to permit the retention of the benefit or to order its restitution." The payor bears the burden of demonstrating its payments, though negligently made, nevertheless were the result of an excusable mistake of fact.[18]

The voluntary payment rule does not apply when there is duress, fraud, misrepresentation, or a mistake of fact.[19] However, summary judgment on grounds

---

[18] *Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435 at *15 (Del. Super. 2021) (citations omitted).

[19] *See W. Nat. Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164, 169 (Del. 1964) (finding payments under duress are involuntary); *Envolve Pharmacy Sols., Inc. v. Rite Aid Hdqtrs. Corp.*, 2021 WL 140919 at *11 (Del. Super. Jan. 15, 2021) (ruling courts should not apply the voluntary payment doctrine to fraud, misrepresentations, or mistakes of fact).

7

of the voluntary payment doctrine are proper when undisputed facts are insufficient to establish these defenses.[20]

"A claim for fraud requires (i) a false representation, (ii) the defendant's knowledge of or belief in its falsity or the defendant's reckless indifference to its truth, (iii) the defendant's intention to induce action based on the representation, (iv) *reasonable reliance by the plaintiff on the representation*, and (v) causally related damages."[21] Duress similarly requires that any threats actually induce the assent of the person claiming to be the victim of duress.[22]

Here, there are no mistakes of law or fact and Defendant has waived his reimbursement claim under the doctrine of voluntary payment. Defendant admits to being aware of the Original Lease, its terms, and the fact that Plaintiff Barbara Kauffman's request of a rent increase in 2006 was a potential breach of the contract, either literally as Barbara requested it or when the current owner of Defendant Ocean View Produce, Inc. wrote the first check.[23] Defendant knew of the overpayment issue even as he offered $134,000 extra in rent payments over the course of seventeen years. When the rent was increased the current owner of Defendant Ocean View Produce, Inc. admits that he chose not to raise issues in part so that Plaintiff

---

[20] *See e.g.*, *W. Nat. Gas Co. v. Cities Serv. Gas Co.*, 201 A.2d 164, 169–70 (Del. 1964).
[21] *Trifecta Multimedia Holdings Inc. v. WCG Clinical Servs. LLC*, 318 A.3d 450, 463 (Del. Ch. 2024) (emphasis added).
[22] *See Cianci v. JEM Enter., Inc.*, 2000 WL 1234647 at *10 (Del. Ch. Aug. 22, 2000).
[23] Answering Br. Ex. D at 53–54, 67–71.

would not seek another tenant and he could remain there.[24] This was the rationale relied upon by the Defendant, not any justification Plaintiff Barbara Kauffman may have provided. Thus, there is no factual support of any fraud, misrepresentation, or duress. In other words, Defendant was not induced by Barbara Kauffman's representations but his desire to stay at the location. Not only do the totality of circumstances fail to establish that Defendant's alleged overpayment is unjust, but the circumstances also suggest it would be unjust to force Plaintiff to repay all this money without adequate notice or opportunity to potentially seek other tenants over the many years Defendant chose to stay there. Thus, Defendant's Counterclaim II for reimbursement and arguments for fraud and duress under Counterclaim III are barred by the voluntary payment rule.

Defendant's remaining theories of the case are a lack of consideration, lack of negotiation, contract of adhesion, undue influence, unconscionability, and that Plaintiffs violated the implied covenants of good faith and fair dealing.

Plaintiffs argue that Defendant's entire action is barred by 10 *Del. C.* § 8106, the statute of limitations, for actions subject to a three-year limit. 10 *Del. C.* § 8106 applies to, *inter alia*, ". . . actions to recover a debt not evidenced by a record or by an instrument under seal. . . ."[25] The most recent time the rent was increased was in

---

[24] *See id.* at 40, 67–72.
[25] 10 *Del. C.* § 8106(a).

either 2014 or 2015, and thus a three-year statute of limitations would bar Defendant's various theories of contract damages.[26]

No theory would toll the statute beyond the point where the party was objectively aware, or should have been aware, of the facts giving rise to the wrong.[27] However, Defendant admits to having knowledge of the factual and legal issues giving rise to this reimbursement claim in 2006, and thus this principle does not apply to this statute of limitations analysis.[28]

Defendant attempts to overcome Plaintiffs' statute of limitations defense by asserting that the Original Lease is a contract under seal.[29] In Delaware, a contract under seal is subject to a twenty-year common law statute of limitations, rather than the three-year limit of 10 *Del. C.* § 8106.[30]

The Delaware Court of Chancery has held that while claims to enforce a contract under seal are governed by the twenty-year common law statute, fraudulent claims and other claims arising from the parties' negotiations are governed by the three-year limitations period of 10 *Del. C.* § 8106.[31] Regardless of whether the Original Lease is a contract under seal or not, Defendant's remaining allegations—

---

[26] *See supra* note 5.
[27] *Capano v. Capano*, 2014 WL 2964071 at *9 (Del. Ch. June 30, 2014).
[28] Answering Br. Ex. D at 53–54, 67–71.
[29] Answering Br. at 18; *see* Opening Br. App. at A22.
[30] *Whittington v. Dragon Group, L.L.C.*, 991 A.2d 1, 10–11 (Del. 2009); *see* 10 *Del. C.* § 8106.
[31] *See Capano v. Capano*, 2014 WL 2964071 at *8–9 (Del. Ch. June 30, 2014).

10

lack of consideration, lack of negotiation, contract of adhesion, undue influence, unconscionability, and that Plaintiffs violated the implied covenants of good faith and fair dealing—all are governed by the three-year limitations period of 10 *Del. C.* § 8106.

Furthermore, "the effect of a contract under seal is only that it precludes a challenge of its validity on the grounds of lack of consideration."[32]  Thus, Defendant's own theory of the case would also preclude Defendant from arguing that the Rent Increasing Leases lacked consideration even if that theory were not barred by the statute of limitations.  As a result, Defendant's remaining theories for contract damages are barred by the statute of limitations.

## CONCLUSION

As Defendant's remaining counterclaims are barred under the laws of Delaware, Plaintiffs' Motion for Summary Judgment should be **GRANTED**, and accordingly this case should be **DISMISSED**.

**IT IS SO ORDERED.**

/s/ *Mark H. Conner*
_____
Mark H. Conner, Judge

cc: Prothonotary

---

[32] *Husband (P.J.O.) v. Wife (L.O.)*, 418 A.2d 994, 996 (Del. 1980).

11